## TOMIAK v HAMTRAMCK SCHOOL DISTRICT

Docket Nos. 75897, 75901. Argued May 7, 1986 (Calendar No. 2). Decided December 22, 1986.

Richard J. Tomiak petitioned the State Tenure Commission, challenging a layoff by the Hamtramck School District and the school district's failure to recall him as a tenured teacher, and seeking reinstatement and back pay. The commission found in favor of the district, holding that the plaintiff's initial layoff and the subsequent removal of the plaintiff's name from a recall list were proper. The Ingham Circuit Court, Robert Holmes Bell, J., affirmed, finding no procedural, evidentiary, or constitutional errors which mandated reversal. The Court of Appeals, GRIBBS, P.J., and BRONSON and SHEPHERD, JJ., affirmed in part and reversed in part and remanded for a hearing before the school board, holding that while the act of removing the plaintiff's name from the recall list was not barred by the statute of limitations of the teacher tenure act, it was a revocation of tenure and a preremoval hearing was required (Docket No. 74090). The district appeals and the plaintiff cross-appeals.

In a unanimous opinion by Justice BRICKLEY, the Supreme Court *held:*

The plaintiff abandoned his right to recall by the school district and was not entitled to a full evidentiary hearing prior to removal of his name from the district's recall list.

1. The primary purposes of the teacher tenure act are to maintain an adequate and competent teaching staff, free from political and personal interference, and to protect teachers from arbitrary and capricious employment practices by school boards. Under the act, any teacher on permanent tenure whose services are terminated because of a necessary reduction in personnel must be appointed to the first vacancy in the school

REFERENCES

Am Jur 2d, Schools §§ 149-160.

Termination of teacher's tenure status by resignation. 9 ALR4th 729.

Elements and measure of damages in action by school teacher for wrongful discharge. 22 ALR3d 1047.

district for which the teacher is certified and qualified. The laid-off teacher has a right to be recalled. In this case, the plaintiff, who was under contract with another district at the time of initial recall, was permitted under the collective bargaining agreement to decline the recall, request a leave of absence, and remain on the recall list. However, evidence and testimony indicated that the plaintiff intended to abandon his subsequent right to recall and acted in accordance with that intent.

2. At the time of a layoff, a teacher has two distinct rights: a right to recall and, upon subsequent employment by another district, a right to a shorter probationary period. The rights in the original school district are entirely dependent upon the right to recall. An abandonment of the right to recall is a resignation of the dependent tenure rights in the original district, although residual subsequent employment rights remain. Abandonment is a voluntary resignation without a written offer to terminate. It is not a revocation of tenure, and, thus, the notice and hearing provisions of the tenure act do not apply. Through the doctrine of abandonment, the Tenure Commission has construed the act to allow a teacher to discontinue services by mutual consent and preserve residual tenure rights without compliance with the act's written notice requirement. While the act does not precisely anticipate the procedure required for abandonment, it does contemplate voluntary resignation. In this case, the plaintiff did not expressly resign. What occurred can be described as resignation by mutual consent. Under the provisions of the act and in the light of logic and prior judicial reasoning, an abandoning teacher does not preserve the right to a full hearing which is reserved for teachers arbitrarily discharged from a position which they actively sought to retain.

3. No due process violation of the United States or Michigan Constitution occurred as a result of the board's action. The plaintiff was afforded a full posttermination hearing and pretermination notice and opportunity to respond, satisfying the requirements of federal due process.

4. The defendant waived the statute of limitations defense by failing to assert it in its answer or before the Tenure Commission.

Reversed.

138 Mich App 644; 360 NW2d 257 (1984) reversed.

1. Schools — Teacher Tenure Act — Layoff — Recall — Abandonment — Due Process.

Neither the teacher tenure act nor due process requires a full

evidentiary hearing by a school board before the board may remove from a recall list the name of a laid-off teacher who has abandoned the right to recall (US Const, Am XIV, Const 1963, art 1, § 17, MCL 38.105; MSA 15.2005).

2. Schools — Teacher Tenure Act — Layoff — Recall — Abandonment.

    At the time of layoff, a tenured teacher has a right to recall; tenure rights in the original school district are entirely dependent upon the right to recall, and an abandonment of the right to recall is a resignation of the dependent tenure rights in the original school district (MCL 38.105, 38.111; MSA 15.2005, 15.2011).

*David Melkus* for the plaintiff.

*Law Offices of Thomas W. H. Barlow, P.C.* (by *Thomas W. H. Barlow, Janet E. Lanyon,* and *Paul E. Richards*), for the defendants.

Amici Curiae:

*Linda L. Bruin* for Michigan Association of School Boards.

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen O. Schultz* and *William F. Young*), for the Michigan Education Association.

BRICKLEY, J. This case of first impression requires us to decide whether Michigan will recognize the doctrine of abandonment as applied to layoff recall rights under the teacher tenure act. If abandonment is recognized, the parties ask that we determine what process is due a teacher when a board of education makes a determination of abandonment. This case also presents the question, again of first impression, whether the teacher tenure act requires recall beyond the "first vacancy" specified in MCL 38.105; MSA 15.2005. Additional issues of due process, statute of limita-

tions interpretation, and proper remedial action are presented for resolution. We address only those issues necessary to decide the case.

We conclude that plaintiff abandoned his recall rights with the defendant, Hamtramck school system, and was not entitled to a full evidentiary hearing before the Hamtramck Board of Education removed his name from the recall list. Hence, we reverse the judgment of the Court of Appeals.

### I. FACTS

The plaintiff-appellee, Richard J. Tomiak, was employed by defendant-appellant, Hamtramck School District, in the school year 1969-70. At the end of his second year of teaching he gained tenure and taught for five more years. Defendant encountered financial difficulties in the summer of 1976 and plaintiff was laid off before the start of the 1976-77 school year. MCL 38.105; MSA 15.2005 provides for laying off tenured teachers. He secured employment for that school year with the Roseville School System.

Defendant, anticipating unexpected funds from the sale of property, was able to issue a recall to plaintiff in January, 1977. Plaintiff declined the recall because of his contract with the Roseville School System. Because § 68 of the collective bargaining agreement in force at Hamtramck allowed a teacher contracted to another school system to decline a recall, plaintiff was retained on the recall list.

Defendant issued a second recall on June 30, 1977, and plaintiff was one of the teachers notified. Plaintiff again refused the recall because of his "contractual" commitment to the Roseville system. However, the State Tenure Commission heard testimony from Roseville school officials and found

that, at the time of the second recall, plaintiff neither had a contract nor was being pressured to remain at Roseville. The Tenure Commission found plaintiff's testimony was not credible on this issue. After plaintiff refused the second recall, Hamtramck Superintendent Clarence Pilatowicz, informed Mr. Tomiak that the only way he could "cover" himself was to request and obtain a leave of absence from the board of education since § 68 of the collective bargaining agreement did not apply to this recall at the end of a school year. Plaintiff requested such a leave. The board committee considered the request and, at a public meeting on September 6, 1977, denied the leave. The board also denied another teacher's request at the same meeting and reasoned that both requests, if granted, would cause administrative and seniority difficulties.

Plaintiff was not formally notified of the board's decision, and when he did not report for work in September, 1977, his name was removed from the recall list. Although plaintiff did not receive notice that he had been removed from the recall list, he remained in contact with defendant's school superintendent and was aware that several new teachers had been hired.

The State Tenure Commission found that from 1977 to 1980 there was continuous contact between plaintiff and the superintendent. The superintendent said that he probably mentioned the denial of leave and removal from the recall list; however, plaintiff responded that he did not know of the denial and removal. The State Tenure Commission disbelieved plaintiff's testimony that he sent written yearly requests in 1978 and 1979. Hence, 1977 was the last written correspondence regarding leave so as to preserve the right to recall.

There was testimony by the superintendent that plaintiff and he began to explore Mr. Tomiak's return as a "new hiree." In fact, plaintiff applied for a position in the same manner that a nontenured new teacher would. Again, plaintiff disagreed that it was clear that he was being considered as a new hiree.

In early 1980, plaintiff found his relationship with the Roseville School System had seriously deteriorated. Plaintiff was disciplined for "gross negligence"; i.e., falsification of student records, and for "making unsavory advances" toward female employees of co-op employers where he attempted to place students. Plaintiff, after grieving the discipline imposed on him, resigned his position with Roseville and began to assert his recall rights with Hamtramck.

Superintendent Pilatowicz offered plaintiff a position with defendant in 1980 at the salary of a new employee. However, there was a dispute as to the events which occurred. Plaintiff stated he did not refuse the job, only the salary. Superintendent Pilatowicz stated that plaintiff refused the job because of the salary. In any event, plaintiff did not begin at the teaching position in the 1980 school year.

In November, 1980, plaintiff filed a petition in propria persona for a hearing with the State Tenure Commission, seeking reinstatement and back pay at Hamtramck. Plaintiff challenged the initial layoff in 1976 as well as the failure to recall him as a tenured teacher. On June 11, 1981, the commission issued three decisions and orders.

The State Tenure Commission concluded that neither party was entitled to summary judgment. The commission held that a tenured teacher's right to recall is not necessarily extinguished

when refusal of the first vacancy is predicated on an obligation to another school board. The commission also held that a board is not required to proceed under article IV of the act, which addresses dismissals, in abandonment cases. The remaining issues were deemed capable of resolution only after an evidentiary hearing.

The parties filed interlocutory appeals in the Ingham Circuit Court. The court denied plaintiff's appeal and granted defendant's. However, the circuit court declined to exercise jurisdiction until the State Tenure Commission made a decision on the merits.

In the Ingham Circuit Court, plaintiff added claims under 42 USC 1983, alleging that the actions taken by the defendant had violated his due process rights. In response, defendant removed the entire case to the United States District Court for the Eastern District of Michigan.

On October 15, 1981, the United States District Court issued an abstention, sua sponte, *Texas v Pullman Co,* 312 US 496; 61 S Ct 643; 85 L Ed 971 (1941), on the 42 USC 1983 claims, and remanded the state claims to the Tenure Commission.

The proceedings in the Tenure Commission involved extensive discovery and two days of hearings. On January 27, 1983, the commission issued its decision in favor of defendant, holding that the initial layoff in 1976 was proper, there was no subterfuge to induce waiver in 1977-78, and plaintiff had totally relinquished his employment relationship with defendant by the end of the 1977-78 school year.

Plaintiff again appealed the decision of the Tenure Commission to the Ingham Circuit Court. On September 15, 1983, the court issued an opinion and order affirming the Tenure Commission. Judge Robert Holmes Bell applied the standard of review

found in § 106 of the Administrative Procedures
Act, MCL 24.201; MSA 3.560(101), and concluded,
after reviewing the pleadings and hearing oral
argument, that there were no procedural, eviden-
tiary, or constitutional errors which mandated
reversal.

Plaintiff then appealed to the Court of Appeals,
which reversed in part and remanded for a hear-
ing before the Hamtramck School Board. The
Court of Appeals affirmed the decision that the
action was timely and not barred by the tenure act
statute of limitations, MCL 38.121; MSA 15.2021,
the survival of recall rights beyond the first va-
cancy, and the finding that the 1976 layoff was
proper. However, the Court disagreed with the
commission's and circuit court's characterization
of the defendant's removal of plaintiff's name from
the recall list as an acknowledgment of abandon-
ment, i.e., resignation. The Court of Appeals rea-
soned that the act of removing plaintiff's name
from the recall list was a revocation of tenure, and
held that a preremoval hearing was required.

## II. THE TEACHER TENURE ACT

### A

Unfortunately, the teacher tenure act was en-
acted before the Legislature published House and
Senate analysis papers.[1] As a result, much of the
interpretation of the act has developed through

---

[1] The preamble to the act provides only:

"AN ACT relative to continuing tenure of office of certif-
icated teachers in public educational institutions; to provide for
probationary periods; to regulate discharges or demotions; to
provide for resignations and leaves of absence; to create a state
tenure commission and to prescribe the powers and duties
thereof; and to prescribe penalties for violation of the provi-
sions of this act.

judicial articulation of the perceived legislative intent.

The most concurrent literature relating to the act appears in 37 Mich L R 430 (1939). The primary "evil" sought to be eliminated by the tenure act was the unfettered power of school boards to hire and fire their employees at will.[2]

> The large turnover in the profession was due in part to certain practices which were widespread throughout the country; among them may be noted discharge (1) because of political reasons, (2) because of non-residence in the community, (3) in order to make places for friends and relatives of board members or influential citizens, (4) in order to break down resistance or reactionary school policies, and (5) in order to effect economies either by diminishing the number of teachers and increasing the amount of work assigned to those retained, or by creating vacancies to be filled by lower salaried, inexperienced employees. Of these practices the first was exceedingly influential in the growth of the tenure movement, some of the more notorious cases of political dismissal challenging the attention of the public to the injury to professional morale and efficiency resulting from the misuse of the control vested in the administrative agencies. The remedy for such abuses was sought in legislation designed to strip the school boards of their autocratic power and to prescribe for them rules of administrative action which would ensure a greater degree of security to their employees. [37 Mich L R 430, 431-432 (1939).]

This Court has held, and the Court of Appeals has reiterated, that the primary purposes of the teacher tenure act are to maintain an adequate

---

[2] For example, in 1923 the State of Wyoming had a forty-seven percent turnover in one year. Courts generally upheld the board's power to fire at will and would not impose upon the board any duty to give reasons for its actions. See, e.g., *People ex rel Fursman v Chicago,* 278 Ill 318, 325-326; 116 NE 158 (1917).

and competent teaching staff, free from political and personal interference, *Detroit Bd of Ed v Parks,* 417 Mich 268; 335 NW2d 641 (1983), and to protect teachers from arbitrary and capricious employment practices of school boards. See *Davis v Harrison Bd of Ed,* 126 Mich App 89; 342 NW2d 528 (1983).

In a case which considered whether striking teachers were entitled to a hearing before discharge, we said:

> These goals, as set forth in *Rehberg v Ecorse School Dist No 11,* 330 Mich 541, 545; 48 NW2d 142 (1951), quoting cases from foreign jurisdictions, are to "maintain an adequate and competent teaching staff, free from political and personal arbitrary interference"; to promote "good order and the welfare of the State and of the school system by preventing removal of capable and experienced teachers at the personal whims of changing office holders"; and "to protect and improve State education by retaining in their positions teachers who are qualified and capable and who have demonstrated their fitness, and to prevent the dismissal of such teachers without just cause." [*Rockwell v Crestwood School Dist,* 393 Mich 616, 632; 227 NW2d 736 (1975), app dis 427 US 901; 96 S Ct 3184; 49 L Ed 2d 1195 (1976).]

**B**

This case primarily involves the sections in article IV and article V, with emphasis on the recall provision in article IV. The following are the statutory provisions which are most pertinent:

*1. Art. IV, § 5 Necessary Reduction in Personnel, First Vacancy. MCL 38.105; MSA 15.2005.*

> Any teacher on permanent tenure whose services are terminated because of a necessary reduc-

tion in personnel shall be appointed to the first vacancy in the school district for which he is certified and qualified.

The statute grants to a laid-off teacher a right of recall, provided the teacher is certified and qualified. However, a school board has not been considered to be required to have a pretermination hearing for such teacher who is laid off, because a layoff under this section of the act is not a discharge or demotion. See *Anderson v Harper Woods School Dist,* 74 Mich App 227; 253 NW2d 718 (1977). See *Steeby v Highland Park School Dist,* 56 Mich App 395; 224 NW2d 97 (1974). Thus, this section is unique in that a teacher may "lose" a job without a hearing, while some rights of tenure continue.

*2. Art. IV, § 1 Discharge, Demotion or Retirement of Teachers. MCL 38.101; MSA 15.2001.*

Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided. Nothing in this act shall be construed as preventing any controlling board from establishing a reasonable policy for retirement to apply equally to all teachers who are eligible for retirement under Act No. 136 of the Public Acts of 1945 or having established a reasonable retirement age policy, from temporarily continuing on criteria equally applied to all teachers the contract on a year-to-year basis of any teacher whom the controlling board might wish to retain beyond the established retirement age for the benefit of the school system.

This section provides the primary protection for a tenured teacher. This Court has held that the very purpose of the act is to protect tenured

teachers from being demoted or discharged unless the board can show just and reasonable cause, and only after written charges are filed and the teacher has been furnished with notice of the date of a hearing. *Rehberg v Ecorse School District #11,* 330 Mich 541; 48 NW2d 142 (1951).

It is this section which plaintiff argues should govern defendant's act of removing his name from the recall list. The Court of Appeals seems to have accepted this argument.

*3. Art. V, § 1 Resignation and Leave of Absence; Teacher's Duties, Notice. MCL 38.111; MSA 15.2011.*

> No teacher on continuing tenure shall discontinue his services with any controlling board except by mutual consent, without giving a written notice to said controlling board at least 60 days before September first of the ensuing school year. Any teacher discontinuing his services in any other manner than as provided in this section shall forfeit his rights to continuing tenure previously acquired under this act.

It is defendant's argument that when plaintiff abandoned his recall rights, he had, in effect, resigned his employment and was no longer entitled to the procedural rights of article iv. The Court of Appeals found no resignation.

### III. FIRST VACANCY

The Tenure Commission, circuit court, and Court of Appeals all held that plaintiff was entitled to recall beyond the first vacancy, and, thus, the right to recall is not extinguished as a matter of law by refusal. The Court of Appeals reasoning "[t]hat a teacher is entitled to the first available position sheds no light on whether refusal of that

position destroys all of the teacher's right under the Act."

We believe the first vacancy provision, MCL 38.105; MSA 15.2005, is a legislative statement of priority. That is, the Legislature has made a clear directive that a school board must offer the first vacancy, not a vacancy chosen by the board. Therefore, the wording of this provision neither precludes additional vacancy offers, nor in our view does it guarantee recall offers ad infinitum.

Because the teacher tenure act is a relatively skeletal act and was enacted before the Legislature published its own analysis, the limits of the first vacancy provision are not readily discerned. As we have in the past, however, we give great weight to the expertise of the Tenure Commission where there are gaps in the statutory scheme. *Magreta v Ambassador Steel Co (On Rehearing)*, 380 Mich 513; 158 NW2d 473 (1968).

Indeed, the varied analyses by the commission, courts, parties, and amicus curiae are all worthy of consideration.[3] Hence, we urge legislative attention

---

[3] Hamtramck makes a cogent argument that multiple recalls would create chaos in determining seniority within the district, and this disruption would be adverse to the goals of the tenure act. Amicus curiae Michigan Association of School Boards argues that the rights and duties of school boards must be protected as well. And, when the first vacancy provision is considered in conjunction with MCL 38.92; MSA 15.1992, which guarantees shorter probationary periods, a tenured teacher who declines a recall because of a commitment to another district, will become a tenured teacher in that district after one year, if not sooner.

The choices for the capable teacher, whom the Teachers' Tenure Act seeks to protect, are not as risky as may first appear and certainly not so impossible as the State Tenure Commission suggests in its 1981 opinion. The teacher may: (1) return to the first school district where he or she already has tenure; (2) complete a year of teaching in the second school district and become tenured there; or (3) request that the second district grant him or her tenured status immediately. If anything, this range of options gives the tenured teacher who is laid off considerably more flexibility than that available to most employees who must make similar employment decisions.

to MCL 38.105; MSA 15.2005, in order to define the rights of laid-off teachers and the duties of controlling school boards.

### IV. ABANDONMENT

When plaintiff was recalled to the first available vacancy in January, 1977, he was teaching in the Roseville School District and declined the recall. The collective bargaining agreement in effect at Hamtramck allowed a teacher under contract with another system to request a leave of absence and remain on the recall list.[4] The finding of abandonment, then, requires an inquiry into the recalls subsequent to January, 1977.

Because the Court of Appeals remanded for a hearing, the questions raised by the abandonment doctrine and its application here were not decided below. However, the circuit court and the Tenure

On the other hand, a strict reading of the first vacancy provision could produce unwanted results.

As noted by the commission below, when a tenured teacher's services are terminated due to a necessary reduction in personnel, no controlling board can realistically expect the teacher to remain idle in the hope that a vacancy will occur. Defendant's view, if adopted, might cause other school systems to refrain from hiring qualified teachers who are laid off, for fear that the teachers would have to accept the first recall by their prior employer or forfeit tenure previously achieved. [138 Mich App 644, 651; 360 NW2d 257 (1984).]

[4] If a laid off teacher has committed himself to a full time study program, or a contractual term of employment and is recalled to his teaching position, he shall have the option of returning to it or of accepting a leave of absence without loss of senioity [sic] for the remainder of that school year and negates any unemployment compensation for that period. [Section 68(I), Agreement between the Board of Education of the School District of the City of Hamtramck and the Hamtramck Federation of Teachers, Local 1052, American Federation of Teachers AFL-CIO, September 7, 1976 to Labor Day, 1977.]

Commission both accepted its use in this state, as well as its application to the facts here. We agree. As the circuit court ably reasoned:

> Clearly, the abandonment doctrine cannot be employed against a tenured teacher who manifests every intention of continuing on the job. But it is equally clear that a local board must have some legal mechanism with which to treat those employees who for whatever reason, refuse to work and refuse to verbalize a resignation. The abandonment doctrine provides that tool. It has been accepted and affirmed in several Michigan cases *Johnson v Taylor School District,* STC 69-17 (1970); *Purcell v Ferndale School District,* STC 76-56 (1979), Court of Appeals No. 59505, Nov. 24, 1982; *Carswell v Wayne-Westland Schools,* STC 78-36 (1979). It is an established legal principle in Michigan.

In the case sub judice, the Tenure Commission considered the evidence and testimony to determine whether plaintiff had evidenced an intent to abandon and effectuated that intent with an external act. Of particular importance was the collective bargaining agreement in effect at Hamtramck. Section 69(B) provided that teachers interested in remaining on recall were required to submit annual notification by registered letter.[5] In fact, upon receipt of the second recall notice, plaintiff sent a letter complying with § 69(B). However, plaintiff testified that in 1978 and 1979 he "hand delivered" the letters to Superintendent Pilatowicz,

---

[5] Section 69(B) of the collective bargaining agreement states:

> To remain on layoff and subject to recall from layoff, a teacher shall notify the school district of such intention annually by registered letter (return receipt requested) postmarked on or between June 1 and June 30.

even though he knew of the contract language.[6] Mr. Pilatowicz denied receiving either letter. Therefore, the commission was compelled to make a judgment regarding credibility.

Finding plaintiff's testimony "replete with inconsistencies, revisions and evasive responses," the commission gave greater weight to Mr. Pilatowicz's account and found that the 1978 and 1979 letters were not delivered. The commission also found that plaintiff remained in contact with Superintendent Pilatowicz after September, visited the Hamtramck district, and was aware that several new teachers had been hired.

We are not persuaded by the circumstances of this case or the arguments of the plaintiff that we should reverse the findings of the lower tribunals that the doctrine of abandonment is viable in teacher tenure circumstances. Neither do we disagree that plaintiff intended to abandon his recall rights at Hamtramck in favor of his position at Roseville, and acted in accordance with that intent. Again, we give great weight to the expertise and experience of the State Tenure Commission.

### V. HEARING REQUIREMENT

#### A. MICHIGAN TEACHER TENURE ACT

Given that abandonment is a recognized doctrine and that the facts here indicate that plaintiff did abandon his rights to recall in Hamtramck, there remains the question what procedure is required. This issue has become one of characterization, that is, if abandonment is a species of resignation, then a full hearing is not required. However, if abandonment is a species of tenure

---

[6] Plaintiff was a member of the collective bargaining team and the Tenure Commission noted that the "certified mail—return receipt requested" language was added to the contract at plaintiff's request.

revocation, then a full hearing is required before a school board may remove a teacher from a recall list. This is more than a mere exercise in semantics.

This dispute as to characterization formed the basis of the State Tenure Commission's and circuit court's decisions that a full hearing *was not* required, as well as the Court of Appeals decision that a hearing *was* required. We hold that neither the teacher tenure act nor due process requires a full hearing before an abandoning teacher's name may be removed from the recall list.

The following are the different articulations by the commission, the circuit court, and the Court of Appeals.

> [Plaintiff] suggests, however, that a controlling board's treatment of a teacher's actions as an abandonment is a revocation of continuing tenure. By equating these two concepts, appellant contrives an argument in an attempt to lead us to conclude that a teacher's abandonment can only be dealt with under Article IV [dealing with discharge or demotion and the requisite procedural safeguards]. *Abandonment and revocation of continuing tenure are two distinct and different matters, however. An abandonment is a voluntary resignation—without a written offer to terminate* the employment relationship. A voluntary resignation does not give rise to any Article IV rights. Ordinarily, a resignation terminates the employee's right to further employment. (Emphasis added.) [Decision and Order of the State Tenure Commission, January 27, 1983 at p 11.]

The circuit court quoted the passage above and added:

> If one were to accept the premise upon which this argument is founded, that abandonment is a

method of discharge, then it is certainly arguable that it allows a circumvention of safeguards. However, the Commission declined to accept that premise. See order of January 27, 1983 at 11.

The Court of Appeals rejected this approach and focused on the act of the board in removing Tomiak's name from the recall list:

> The Commission concluded that plaintiff abandoned his employment in Hamtramck in favor of his contractual commitment in Roseville. Thus, according to the Commission, there was no revocation of tenure by defendants, but only an acknowledgment of plaintiff's voluntary abdication of tenure. We disagree with this characterization of the circumstances. Even if plaintiff had already decided to give up his rights in Hamtramck, it is clear that he still had tenure there until defendants removed his name from the recall list. It cannot be denied that defendants acted, and that their action amounted to a revocation of plaintiff's tenure. A teacher may remove himself from the protections of the statute by expressly resigning without giving the 60-days notice required by MCL 38.111; MSA 15.2011. *Wright v Port Huron School District,* 13 Mich App 1, 5; 163 NW2d 673 (1968). However, there was no such resignation in this case.

We perceive that a teacher has two distinct rights at the time of a layoff. First, a right to recall and, second, subsequent employment rights to a shorter probationary period in another school. MCL 38.92; MSA 15.1992.[7] Included in the first

---

[7] MCL 38.92; MSA 15.1992 provides in part:

> If a teacher on continuing tenure is employed by another controlling board, he shall not be subject to another probationary period of more than 1 year beginning with the date of employment, and may at the option of the controlling board be placed immediately on continuing tenure.

right are the full tenure rights in the original school district. However, the rights in the original school district are *entirely dependent upon the right to recall,* and an abandonment of the right to recall is a resignation of the dependent tenure rights in the original school district.

Although plaintiff was removed from the recall list, and Hamtramck concedes that his subsequent employment tenure rights have not been forfeited, he continued to have residual tenure rights both with Hamtramck and other school districts.[8] The state tenure commission said:

> An abandonment is a voluntary resignation— without a written offer to terminate the employment relationship. A voluntary resignation does not give rise to any Article IV rights. Ordinarily, a resignation terminates the employee's right to further employment. Should the teacher be subsequently reemployed by the same school district, however, he or she could not be required to serve out a probationary period. *Lash v Dearborn School District* (64-1). Similarly, if the resigning teacher is employed by another controlling board only a one year probationary period could be required. MCL 38.92; MSA 15.1992. In contrast, if a controlling board invokes the penalty for improper resigna-

---

[8] We use the term "subsequent employment tenure rights" to represent those rights provided by statute in MCL 38.92; MSA 15.1992, and those rights articulated by the State Tenure Commission and this Court. *Lash v Dearborn School Dist,* State Tenure Commission Decision No 64-1 (January 12, 1965); *Bode v Roseville School Dist,* 405 Mich 517; 275 NW2d 472 (1979), reh den 406 Mich 1121 (1979).

If Tomiak were to return to the Hamtramck system, where he had already achieved tenure, his subsequent employment tenure rights would prevent the Hamtramck School District from requiring an additional probationary period. *Lash v Dearborn School Dist, supra.*

If Tomiak were to be employed in another school district, his subsequent employment tenure rights would prevent that system from requiring a probationary period longer than one year. MCL 38.92; MSA 15.1992; see n 7 *supra; Bode v Roseville School Dist, supra.*

tion, the teacher would no longer enjoy these benefits of continuing tenure status. Obviously, this is not a penalty to be taken lightly. Moreover, the penalty can only be extracted through formal action by the controlling board. *Stevens v DeWitt Public Schools* (77-35). [Decision and order of the State Tenure Commission, January 27, 1983 at p 11.]

Hence, the Court of Appeals decision that his tenure was revoked does not, in our view, aptly describe what occurred. The focus upon the board's act of removing plaintiff's name from the list ignores the actions and inaction of plaintiff which preceded the board's response. Accordingly, because there was not a revocation of tenure, the notice and hearing provisions of MCL 38.102; MSA 15.2002 do not apply.

The provisions of MCL 38.111; MSA 15.2011 create certain duties for a teacher who resigns. Restating for the convenience of the reader, the statute provides:

> No teacher on continuing tenure shall discontinue his services with any controlling board except by mutual consent, without giving a written notice to said controlling board at least 60 days before September first of the ensuing school year. Any teacher discontinuing his services in any other manner than as provided in this section shall forfeit his rights to continuing tenure previously acquired under this act.

Here, plaintiff did not expressly resign, and by not doing so, what occurred can be described as resignation by mutual consent.[9]

---

[9] As the Supreme Court of Pennsylvania reasoned in *Jacobs v Wilkes-Barre Twp School Dist,* 355 Pa 449, 453-454; 50 A2d 354 (1947):

We believe the obvious import of MCL 38.111; MSA 15.2011 is to protect school boards from precipitous resignations, as well as to preserve residual subsequent employment rights. The statute expressly allows resignation by mutual consent, which obviates the need for a written notice. In this case, Tomiak's refusal to accept recall and Hamtramck's removal of his name from the recall list acted as mutual consent resignation. However, resignation by mutual consent still preserves the residual subsequent employment rights. Therefore, the Court of Appeals characterization of this case as tenure revocation is incorrect, because the subsequent employment rights remain with the abandoning teacher. Through the doctrine of abandonment, the commission construed the statute to allow a teacher to discontinue his services "by mutual consent," and to preserve tenure rights without compliance with the written notice requirements of § 1.

We find the reasoning of the Court of Appeals decision in *Purcell v Ferndale School Dist,* unpub-

Appellant's failure to report for two consecutive years, the failure to avail herself of the rules governing maternity leaves, of which she had knowledge, and, more specifically, her refusal or failure to notify Davis or the board of her intention regarding the contract after Davis had contacted her, are facts necessarily leading to the conclusion that she expressed, through her actions, a definite intention to abandon the contract. The action of appellee school board in employing a permanent teacher to replace her, only after a reasonable time had elapsed after they had contacted appellant, was an act of, or acquiescence in, the abandonment. Together, these acts constituted a mutual rescission. That the parties have abandoned the contract by acts instead of words or writing is of no consequence. Had appellant and the board, in writing, agreed that the contract was to be thenceforth void and of no effect, it could not seriously be contended that effect would not be given thereto, even though the procedure required by the Act had not been complied with. Similarly, had the parties orally agreed to the same terms, effect would be given to said oral agreement.

lished opinion per curiam, decided November 24, 1982 (Docket No. 59505), persuasive, if not authority. In *Purcell,* the Court held that a teacher who returned from a sabbatical and refused to teach all of his assigned courses had abandoned his employment. The district had assigned different classes than those he had taught before leaving; a dispute ensued, and, when the school year began, he refused to teach any of his classes. When the district notified him that his absence would be considered a voluntary resignation, he appealed to the Tenure Commission. The commission found abandonment, and the circuit court affirmed. Certainly, factual distinctions are apparent between *Purcell* and this case. However, we agree that a finding of abandonment is more properly considered a resignation than a revocation of tenure. Thus, we find that the Tenure Commission properly followed its own precedent in holding that plaintiff was not entitled to a full hearing.[10] We also find two sister states to be in accord with the position that abandonment is a resignation and does not require a full hearing. See *Jacobs v Wilkes-Barre Twp School Dist,* 355 Pa 449; 50 A2d 354 (1947); *Miller v Noe,* 432 SW2d 818 (Ky App, 1968).

The teacher tenure act does not precisely anticipate the procedure required for abandonment. However, it does contemplate voluntary resignation under Article V, § 1. We find that article v, logic, and prior judicial reasoning compels the conclusion that an abandoning teacher does not preserve the right to the full hearing reserved for those teachers who are arbitrarily discharged from a teaching position which they actively sought to retain.

[10] See, e.g., *Carswell v Wayne-Westland Bd of Ed,* State Tenure Commission Decision No 78-36 (December 21, 1979).

## B. DUE PROCESS

Although we hold that the teacher tenure act does not require a full evidentiary hearing before removing an abandoning teacher's name from the recall list, there remains consideration of plaintiff's constitutional right to due process of law. Because continued employment is a protected property interest, a termination of that interest requires conformity to the requirements of due process under the Fourteenth Amendment and Const 1963, art 1, § 17.[11] "[T]he question remains what process is due." *Morrissey v Brewer,* 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972).

The recent consolidated cases in *Cleveland Bd of Ed v Loudermill,* 470 US 532; 105 S Ct 1487; 84 L Ed 2d 494 (1985), and their progeny, provide the guidance for our conclusion that no due process violation of the United States or Michigan Constitutions occurred as a result of the Hamtramck board's actions.

In *Loudermill,* boards of education discharged a security guard and bus mechanic without a pretermination opportunity to respond to allegations made against them.

---

[11] Respondents' federal constitutional claim depends on their having had a property right in continued employment. *Board of Regents v Roth,* 408 US 564, 576-578 [92 S Ct 2701; 33 L Ed 2d 548] (1972); *Reagan v United States,* 182 US 419, 425 [45 L Ed 1162; 21 S Ct 842] (1901). If they did, the State could not deprive them of this property without due process. See *Memphis Light, Gas & Water Div v Craft,* 436 US 1, 11-12 [98 S Ct 1554; 56 L Ed 2d 30] (1978); *Goss v Lopez,* 419 US 565, 573-574 [95 S Ct 729; 42 L Ed 2d 725] (1975).

Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Board of Regents v Roth, supra,* at 577. See also *Paul v Davis,* 424 US 693, 709 [96 S Ct 1155; 47 L Ed 2d 405] (1976). [*Cleveland Bd of Ed v Loudermill,* 470 US 532, 538; 105 S Ct 1487, 1491; 84 L Ed 2d 494, 501 (1985).]

> The essential requirements of due process, and all that respondents seek and the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why a proposed action should not be taken is a fundamental due process requirement. [470 US 546.]

The United States Supreme Court found a violation of due process because the employees were not given an opportunity to respond before termination. However, the Court heavily relied on the fact that the interest of the discharged employees was financial.

> We have frequently recognized the severity of depriving a person of the means of livelihood. While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job. [Citations omitted. 470 US 543.]

Plaintiff, by contrast, was working as a full-time tenured teacher at Roseville when his name was removed from the recall list, and, the action in Hamtramck in no way affected his tenure rights with Roseville. Thus, the "injury" to plaintiff was much less direct, and, in fact, he did not suffer the financial hardships which the *Loudermill* plaintiffs did. Indeed, if defendant never had an opening for which plaintiff was certified and qualified, his benefit from remaining on the recall list might never be realized.

Post-*Loudermill* decisions have supported the *Loudermill* requirements by holding that due process is satisfied if a discharged employee was given an opportunity to respond before termination, and posttermination procedures are available.

In *Brasslett v Cota*, 761 F2d 827 (CA 1, 1985), a

firechief was discharged after making untrue remarks that the fire department was not prepared for major emergencies. The chief claimed a due process violation because he was not given a pretermination evidentiary hearing. Citing *Loudermill,* the Court of Appeals held that a full evidentiary hearing was not required.

> The specific procedural requirements are to be determined with reference to the interests involved and the availability and extent of post-termination review. When a discharged employee may receive a post-termination hearing to review adverse personnel action, the pretermination hearing need only be extensive enough to guard against mistaken decisions. [761 F2d 836.]

In *Williams v City of Seattle,* 607 F Supp 714 (WD Wash, 1985), a police sergeant was demoted for allegedly using excessive force on a prisoner without a prior evidentiary hearing. The plaintiff claimed that even though there was a right to a postdemotion appeal, the department had violated his due process rights by not holding a predemotion hearing. The court found no due process violation after applying a balancing test weighing the plaintiff's and government's interests as well as the administrative burden.

> Williams' private interest in retaining his rank, from a "property" standpoint is the difference in pay and benefits between sergeants and police officers in the SPD. Although the loss of several hundred dollars of pay per month is substantial, it is less compelling a deprivation than that experienced by the terminated employees in *Loudermill.* Given the availability of post-demotion evidentiary hearing within a few months of the deprivation, the pre-hearing financial loss suffered by plaintiff does not justify process beyond that which the

*Loudermill* court deemed due. [607 F Supp 720.
See also *Levitt v Univ of Texas at El Paso,* 759
F2d 1224 (CA 5, 1985); *DeSarno v Dep't of Commerce,* 761 F2d 657 (CA Fed, 1985).]

There is a significant difference between discharge or demotion, as occurred in the cases above, and abandonment, as occurred here. The employer's actions in discharge and demotion cases are obviously and intentionally against the employee's interest. By contrast, Hamtramck performed a simple ministerial act as a result of the perceived inaction of a former employee. Although it is possible that in a factual situation similar to this case a former employee could claim that the employer came to an erroneous conclusion, the mere recognition of abandonment is a less severe act than discharging or demoting a present employee.

Even though the plaintiffs in *Loudermill* suffered a more direct injury than Tomiak, the Court held that what was required was less than a full pretermination hearing.

We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute. Because respondents allege in their complaints that they had no chance to respond, the District Court erred in dismissing for failure to state a claim. [470 US 547-548.]

Superintendent Pilatowicz informed plaintiff in July, 1977, that the only way to "cover" himself was to apply to the board for a leave of absence. Thus, plaintiff knew that his right to recall would be terminated if he did not secure a leave. By allowing a written request, the board afforded

plaintiff an opportunity to respond and sway the decisionmaker.

> Due to a series of circumstances, I find myself in the distasteful predicament of having to either break a contract [with Roseville] or *jeopardize my future with Hamtramck Schools by not accepting the present position.* [Tomiak's letter to the Hamtramck School Board, July 20, 1977.]

Even though plaintiff's reason for declining recall was found by the commission to be untrue, it was considered by the board and rejected.

The full post-"termination" Tenure Commission hearing and the pre-"termination" notice and opportunity to respond given to plaintiff do, by our reasoning, more than satisfy the requirements of federal due process in this case. We find no basis in the Michigan Constitution to alter this conclusion.

### VI. STATUTE OF LIMITATIONS

When the defendant denied plaintiff's request for leave and subsequently removed his name from the recall list, formal notice of these decisions was not sent to him.[12]

MCL 38.121; MSA 15.2021 provides in part:

> A teacher who has achieved tenure status may appeal any decision of a controlling board under this act within 30 days from the date of such decision, to a state tenure commission.

It has been held by Court of Appeals panels that the running of this appeal period is tolled until the controlling board informs the teacher of his

---

[12] Testimony revealed that the usual practice was to send notice; however, no copy of a notification was found in plaintiff's file.

right to appeal. *Biberstine v Port Austin School Dist,* 51 Mich App 274; 214 NW2d 729 (1974); *Goodwin v Kalamazoo Bd of Ed,* 82 Mich App 559; 267 NW2d 142 (1978).

In *Biberstine,* the Court added the requirement that the thirty-day period did not commence until the teacher received *formal notice* of the board's decision. The Court reasoned that the extremely brief period required formal notice and based its decision on equitable principles and "sound reasoning and common sense." 51 Mich App 279.

Decisions since *Biberstine* have expanded the formal notice requirement to include the explicit notification that the controlling board's decision may be appealed within thirty days. See *Kramer v Van Dyke Public Schools,* 134 Mich App 479; 351 NW2d 572 (1984).

Plaintiff moved for summary judgment in the Tenure Commission to dismiss the statute of limitations defense, arguing that he had not received the required notice. Defendant's response to this motion did not dispute the lack of notice, but instead argued that the action was barred by the doctrine of laches. The commission rejected the defendant's laches argument. Instead of renewing the laches argument on appeal, defendant substituted the argument that the Court should apply the fraudulent concealment statute in MCL 600.5855; MSA 27A.5855.

We find that defendant waived the statute of limitations defense by failing to assert it in its answer or before the Tenure Commission. See *Liddell v DAIIE,* 102 Mich App 636; 302 NW2d 260 (1981), lv den 411 Mich 1079 (1981); *Butler v DAIIE,* 121 Mich App 727; 321 NW2d 781 (1982). Further, we do not find that this issue rises to the traditional standard for considering issues not preserved—"only to be exercised in compelling cir-

cumstances to avert a miscarriage of justice." *People v Oliphant,* 399 Mich 472, 501; 250 NW2d 443 (1976).

### VII. CONCLUSION

We hold that plaintiff abandoned his right to recall to the Hamtramck school system and was not entitled to a full hearing prior to removal of his name from the recall list. Accordingly, we reverse the judgment of the Court of Appeals.

WILLIAMS, C.J., and LEVIN, CAVANAGH, BOYLE, RILEY, and ARCHER, JJ., concurred with BRICKLEY, J.