STATE OF MICHIGAN
COURT OF APPEALS

MACOMB COUNTY and AFSCME COUNCIL 25 AND ITS AFFILIATED LOCAL 893,

UNPUBLISHED
December 26, 2017

Respondents-Appellees,

v

No. 334264
Michigan Employment Relations
Commission (MERC)

JOHN P. GREINER,

LC No. C13 D-074 (13-002118); CU13 D-017 (13-002119)

Charging Party-Appellant.

Before: MURPHY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

The charging party, John Greiner, appeals by right the order of the Michigan Employment Relations Commission (MERC) dismissing his unfair labor practice charges against respondents, Macomb County and AFSCME Council 25, Local 893. For the reasons stated in this opinion, we affirm.

I. BASIC FACTS

On November 7, 2012, Greiner was terminated from his employment with Macomb County for incompetence and insubordination. The incidents underlying the termination decision occurred on September 26 and September 27, 2012. According to a "fact sheet" prepared by one of Greiner's coworkers, on September 26, Greiner was unresponsive on the two-way radio for up to five minutes at a time while he was flagging traffic. Then, on September 27, Greiner regulated traffic incorrectly and in an unsafe manner, was argumentative with the crew and crew leader, and was putting the crew into an unsafe work zone with his actions. On or about October 19, 2012, Greiner was provided with a *Loudermill*[1] hearing by the employer. At

---

[1] *Cleveland Bd of Ed v Loudermill*, 470 US 532; 105 S Ct 1487; 84 L Ed 2d 494 (1985). In *Loudermill*, the United States Supreme Court found that due process was violated for discharged employees if they are not afforded an opportunity, pretermination, to respond to the allegations against them. *Loudermill*, 470 US at 545-546. "Post-*Loudermill* decisions have supported the

the hearing, Paul Long, the staff representative for AFSCME, requested that Macomb County provide evidence in support of its contentions of insubordination and incompetence. There is also evidence suggesting that Long requested the *Loudermill* hearing be continued on a different date after the information had been received. Macomb County refused to continue the hearing and instead terminated Greiner's employment. In the proceedings below and on appeal, Greiner asserts that around the same time that the *Loudermill* hearing was held, he told Karen Bathanti, the Macomb County service director, about an overtime fraud scheme where employees would be paid for overtime that they did not work. He also told Long about the overtime fraud. He asserts that he was terminated because he had irrefutable proof that there was overtime fraud, and AFSCME and Macomb County did not want him to reveal that information either during a fair *Loudermill* hearing or during arbitration.

Greiner filed a grievance regarding his termination. The grievance was denied by Macomb County, and AFSCME sent Macomb County a notice of intent to arbitrate. Long testified that he submitted the grievance to the Arbitration Review Department. However, the grievance was rejected for arbitration on December 19, 2012 because Greiner had been disciplined for similar behavior in the past[2] and there was no evidence that he did not commit the alleged violations in the present case. Greiner appealed the decision, providing evidence to the Arbitration Review Department. However, after re-reviewing his case, the Department again rejected his appeal, this time relying on (1) the progressive discipline used by Macomb County and (2) the existence of a last chance agreement between Greiner and Macomb County.[3] On

_____

*Loudermill* requirements by holding that due process is satisfied if a discharged employee was given an opportunity to respond before termination, and posttermination procedures are available." *Tomiak v Hamtramck Sch Dist*, 426 Mich 678, 701; 397 NW2d 770 (1986). The purpose of a *Loudermill* hearing "is not to definitively resolve the propriety of the discharge [but to provide] an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Plymouth-Canton Community Sch v State Tenure Comm*, 435 Mich 76, 78-79; 457 NW2d 656 (1990) (citation and quotation marks omitted; brackets in original).

[2] The record reflects that in the months leading to his termination, Greiner was subject to multiple disciplinary actions. In particular, he received a two-hour suspension on June 13, 2012 for incompetence, a three-day suspension on July 17, 2012, and a ten-day suspension on August 17, 2012. Greiner grieved the suspensions and his termination. It does not appear that any of the above incidents were accepted for arbitration. Greiner contends that each of them was fabricated in order to create the illusion of progressive discipline justifying his discharge from employment.

[3] The last chance agreement between Greiner and his employer was signed in February 2010. It provided in pertinent part:

> Understanding the severity of an at fault accident on December 8, 2009 and John Greiner's negligence, accident history, and insubordination, the parties to this agreement agree as follows:

May 7, 2013, after Greiner appealed the rejection again, the Department denied the arbitration request, citing the prior rejections and noting that the decision had not been changed by the information submitted.

On April 30, 2013, Greiner filed an unfair labor practice charge against Macomb County, alleging that his discharge violated section 10(1)(c) of the Public Employment Relations Act (PERA), MCL 423.210 *et seq.*, because "just cause" to terminate his employment was not established. He also filed an unfair labor practice charge against AFSCME, alleging that it violated PERA because its actions were arbitrary, dishonest, and discriminatory. He contended that AFSCME failed to fairly represent him because it had "joined forces" with Macomb County to prevent him from exposing in an open forum—i.e. an arbitration hearing or a fair *Loudermill* hearing—that the disciplinary record against him was fictitious. The administrative law judge (ALJ) assigned to the case determined that, as stated, the charges were deficient. Rather than dismissing the case, the ALJ entered a show cause order directing Greiner to correct the deficiencies.

Greiner submitted a comprehensive narrative detailing the timeline of events leading up to his termination. In addition, his lawyer submitted a response explaining that AFSCME failed its duty of fair representation because of its unwillingness to obtain a continuation of the *Loudermill* hearing. He also asserted that there was no evidence at the *Loudermill* hearing that supported the allegations that Greiner was incompetent and insubordinate when performing his job. Greiner further claimed that AFSCME had failed to provide him with representation regarding various grievances he had filed and that it failed to submit his grievances to arbitration. Greiner alleged the union and Macomb County were colluding and discriminating against him because of Greiner's knowledge and threat to disclose the overtime fraud.

* * *

3. Any further acts of negligence, insubordination, or unsafe activity on John Greiner's part shall be cause for his immediate discharge form [sic] employment with the Road Commission of Macomb County. John Greiner and his union agree that no Grievance of any kind will be filed challenging his discharge from employment under the terms of this Last Chance Agreement. The parties agree that the Arbitrator shall be without authority to hear a discharge case if the terms of this Agreement are violated. Further, John Greiner knowingly and willingly waives his right to pursue any form of legal or equitable relief, including any Grievance or civil action of [sic] he is discharged for employment pursuant to the terms of this Last Chance Agreement.

The agreement incorporated a memorandum of understanding and dated February 3, 2010. The memorandum provided that if Greiner was found not guilty of all charges relating to the accident, he could challenge the letter of understanding and memorandum of understanding with the grievance procedure set forth in the collective bargaining agreement. Greiner challenged the last chance agreement, but his challenge was rejected.

-3-

AFSCME moved for summary disposition, asserting Greiner had failed to state a claim for which relief could be granted and that there was no genuine issue of material fact. On October 23, 2013, Greiner's lawyer provided the following response to AFSCME's motion for summary disposition:

> [Greiner] was discriminated against by the employer, because, he insisted that the union representative, Paul Long, reschedule the *Loudermill* hearing; so that, Mr. Greiner's witnesses could testify, and, he two [sic], would be able to testify and provide, irrefutable evidence of his innocence.

> That action, that insistence, that the union represent him, is, what caused the employer to terminate him.

> Mr. Greiner [sic] directive to Paul Long to engage the union to represent him, is, in fact, the reason he was terminated!

> That is, the employer's involvement.

> That is, how, Mr. Greiner was discriminated against, for his union activity.

On March 12, 2014, the ALJ issued an interim order on the order to show cause and AFSCME's motion for summary disposition. The ALJ summarized Greiner's claims against AFSCME and Macomb County, in addition to detailing Greiner's employment history and the events that preceded his termination. With regard to Greiner's charge against Macomb County, the ALJ concluded that Greiner had failed to state a claim under PERA, and she recommended that the charge be dismissed. The ALJ, however, determined that an evidentiary hearing needed to be held on Greiner's claim that AFSCME failed its duty of fair representation by not seeking a continued *Loudermill* hearing. Following the evidentiary hearing, the ALJ entered an order recommending that the charges against AFSCME and Macomb County both be dismissed for failure to state a claim under PERA.

Greiner filed lengthy exceptions to the ALJ's decision. Following the submission of his exceptions, Greiner's assertions were reviewed by MERC. At the outset, MERC noted that Greiner's exceptions failed to comply with its rules, but were permitted because of Greiner's pro se status. MERC interpreted Greiner's exceptions to "express disagreement with the testimony of Union Staff Representative Paul Long," and to challenge the ALJ's ruling by asserting error for "failing to find that filing grievances was one reason for Charging Party's discharge." After reviewing Greiner's exceptions, MERC determined "them to be without merit." Consequently, MERC affirmed the ALJ's decision to dismiss the charges against AFSCME and Macomb County.

## II. FRAUD ON THE COURT

## A. PRESERVATION OF THE ISSUE

Relying on MCR 2.612(C)(3), Greiner seeks to set aside MERC's order dismissing his charges against AFSCME and Macomb County based on his allegation of "fraud on the court."

In his exceptions to the ALJ's order, he raised this issue, and MERC reviewed it. As such, this issue is preserved. See *Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005).

## B. ANALYSIS

Fraud on the court occurs where a party conceals some material fact from the court or makes some material misrepresentation to the court. *Matley v Matley (On Remand)*, 242 Mich App 100, 101; 617 NW2d 718 (2000). Here, Greiner contends that fraud was committed because Long perjured himself when testifying. Greiner seeks to establish the fraud by directing this Court to his own testimony. Specifically, he testified at the evidentiary hearing that he had an audio recording of Long stating that he had received a 58-page harassment complaint from Greiner and stating that he thought the harassment complaint had merit. Long initially testified that he never had any conversation with Greiner regarding the harassment complaint, and he testified that he did not receive a copy of the harassment complaint. On cross examination, Long clarified that he had never received a 100-page harassment complaint from Greiner, and he testified that he had many conversations with Greiner and that the complained of harassment was discussed "[e]very single time." Here, given that the allegedly false or perjured testimony was brought to the ALJ's attention during the evidentiary hearing, we conclude that Greiner cannot establish fraud on the court because no fact was actually concealed from the court. See generally *id*. Moreover, although Greiner directs us to the testimony that he contends is false, he does not explain how the fact that Long received the harassment complaint and stated that it had merit is a *material* fact, nor does he explain how it affected the outcome of the proceedings. Consequently, on the record before this Court, there are no grounds to set aside MERC's order on the basis of fraud on the court.[4]

## III. UNFAIR LABOR PRACTICE

## A. STANDARD OF REVIEW

Greiner next argues MERC's decision affirming the ALJ's dismissal of his unfair labor practice charges against AFSCME and Macomb County is erroneous for a number of reasons. In *Calhoun Intermediate Sch Dist v Calhoun Intermediate Ed Ass'n*, 314 Mich App 41, 46; 885 NW2d 310 (2016), this Court explained:

> We review MERC decisions pursuant to Const 1963, art 6, § 28, and MCL 423.216(e). MERC's factual findings are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole. MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and

---

[4] Furthermore, even if Long had misrepresented the facts related to the harassment complaint to the court, Greiner contradicted that testimony. And the ALJ made clear that she was proceeding "on the basis that everything that you've said is true." In other words, where there was a dispute between Long's testimony and Greiner's testimony, the ALJ assumed that Greiner's version was true, not Long's version.

material error of law.  We review de novo MERC's legal rulings.  [citation and quotation marks omitted.]

## B.  ANALYSIS

### 1.  AFSCME

Greiner asserts that AFSCME violated its duty to fairly represent him because it failed to (1) secure or request a continuation of the *Loudermill* hearing and (2) forward his grievance regarding his ten-day suspension to the Arbitration Review Department.  We disagree.

"A charge that a person has engaged in or is engaging in an unfair labor practice in violation of . . . or PERA, may be filed with the commission."  Mich Admin Code, R 423.151. The charge must include the following information, among other things, "[a] clear and complete statement of the facts which allege a violation of . . . PERA, including the date of occurrence of each particular act, the names of the agents of the charged party who engaged in the violation or violations and the sections of . . . PERA alleged to have been violated."  Mich Admin Code, R 423.151(1)(c).  Greiner specifically contends that AFSCME violated its duty to fairly represent him.

"PERA impliedly imposes on labor organizations representing public sector employees a duty of fair representation . . . ."  *Goolsby v Detroit*, 419 Mich 651, 661 & n 5; 358 NW2d 856 (1984).  "This duty has been described as being fiduciary in nature, and involving a relationship marked by traits of 'fidelity, of faith, of trust, and of confidence.' "  *Taylor Sch Dist v Rhatigan*, 318 Mich App 617, 640-641; 900 NW2d 699 (2016), quoting *Goolsby*, 419 Mich at 662.  "[A] union's duty of fair representation is comprised of three distinct responsibilities: (1) to serve the interests of all members without hostility or discrimination toward any, (2) to exercise its discretion with complete good faith and honesty, and (3) to avoid arbitrary conduct."  *Goolsby*, 419 Mich at 664.  The failure of a union to comport its behavior in accordance with these standards is deemed to comprise a breach of the union's duty to provide fair representation.  *Id*. Therefore, in order to establish a breach of a AFSCME's duty of fair representation, Greiner had to establish that its "conduct toward one of its members of the collective bargaining unit 'is arbitrary, discriminatory, or in bad faith.' "  *Taylor Sch Dist*, 318 Mich App at 641 (citation omitted).

Here, Greiner contends that the ten-day suspension was never submitted to the Arbitration Review Department, despite the fact that he filed a grievance with AFSCME.  In support, he asserts that he never received a rejection from the Arbitration Review Department that corresponded to the ten-day suspension.  At the evidentiary hearing, however, Long testified that he submitted every grievance Greiner filed to the Arbitration Review Department.  Further, AFSCME submitted documentary evidence indicating that suggesting that the Department had reviewed Greiner's ten-day suspension and his termination grievance together.  Further, Cheryl Carroll, the president of AFSCME at the time Griener submitted his grievances, testified that if multiple grievances are filed at or around the same time, the grievances are addressed together, not singly.  Greiner offered no evidence to contradict their testimony.  Instead, he merely speculated that because an individual rejection was not provided, his grievance on the ten-day suspension was never forwarded to the Arbitration Review Department.  Because a party must

come forward with evidence beyond mere speculation, we conclude that MERC did not err by finding this part of Greiner's claim to lack merit.

Greiner also argues AFSCME violated its duty of fair representation by failing to secure or request a continued *Loudermill* hearing. The evidence presented at the evidentiary hearing established that Long requested a continued *Loudermill* hearing on Greiner's termination, and he also requested that Macomb County provide information in support of the underlying allegations of incompetence and insubordination. Greiner suggests, however, that AFSCME failed its duty to insist on a continued hearing. At other times, he acknowledges that AFSCME did in fact ask for a continued hearing, but he contends that they should have done more to ensure that it was actually held. For the purposes of this appeal, we assume without deciding that AFSCME did not request a continued *Loudermill* hearing or that it should have insisted more strenuously that a continued hearing be held. Nevertheless, Long testified that the decision on whether to hold a continued *Loudermill* hearing was a decision in Macomb County's sole discretion. In other words, AFSCME had no control over whether the hearing would be held. Greiner offered no evidence or argument to contradict that testimony. Further, we note that even after Macomb County refused to hold a continued *Loudermill* hearing and instead terminated Greiner, AFSCME continued to represent Greiner. Specifically, a grievance over his termination was undisputedly filed and submitted to the Arbitration Review Department. That grievance was rejected by the Department, Greiner appealed the decision multiple times, and after re-reviewing the issue, the Department continued to reject the grievance for arbitration. Thus, even though the *Loudermill* hearing was not continued, it is plain that AFSCME continued to represent Greiner and it is plain that he was able to present all his evidence in support of his claims to the Arbitration Review Department. The fact that the Department ultimately rejected his grievance is not proof that AFSCME violated its duty of fair representation.

In sum, on the record before this Court, the findings and ruling of the ALJ and MERC were premised on competent, material and substantial evidence, which was not contradicted by Greiner. Accordingly, we conclude that MERC did not err by dismissing Greiner's unfair labor practice charge against AFSCME.

## 2. MACOMB COUNTY

Greiner next argues that MERC erred in dismissing the unfair labor practice charge against Macomb County because he established a prima facie case of discrimination under PERA. Greiner argues that Macomb County conspired with AFSCME to secure Greiner's discharge by fabricating allegations of deficient work performance resulting in disciplinary actions to justify his termination. Greiner asserts that his knowledge and threat to expose an overtime fraud scheme is the true basis for his discharge.

To establish a violation of PERA, MERC has identified the following test:

The elements of a prima facie case of unlawful discrimination under PERA are, in addition to the existence of an adverse employment action, (1) union or other protected activity; (2) employer knowledge of that activity; (3) anti-union animus or hostility toward the employee's protected rights; and (4) suspicious timing or other evidence that protected activity was a motivating cause of the alleged

discriminatory action. [*Taylor Sch Dist*, 318 Mich App at 636 (citation and quotation marks omitted).]

While Greiner could demonstrate an adverse employment action by his discharge, he failed to establish (1) that he was engaged in a protected activity, (2) the existence of "anti-union animus or hostility" by Macomb County, or (3) "suspicious timing" of events to suggest that his engagement in a "protected activity was a motivating cause of the alleged discriminatory action." See *id.*

Despite being given an opportunity by the ALJ to amend and clarify his allegations, Greiner still could not substantiate his claims against Macomb County. The ALJ noted that Greiner's claim that he was discharged to avoid exposure of the overtime fraud scheme being perpetuated failed to "state a claim upon which relief can be granted under PERA." The ALJ explained:

> While exposing the fraud may have been the right things [sic] to do, it is not "concerted activity for mutual aid or protection" and, therefore, not the type of activity which PERA protects.

Although the ALJ opined that Greiner might have established a prima facie case in 2011 pertaining to his April and May 2011 discipline being "unlawfully motivated," that opportunity was not exercised by Greiner because he did not file a charge in relation to these disciplinary actions. In addition, the 2011 disciplinary actions were removed from his file, were not considered in the termination decision and could not be considered by MERC in accordance with MCL 423.23(2)(a) ("No complaint shall issue based upon any unfair labor practice occurring more than 6 months prior to the filing of the charge with the commission. . . .").

As demonstrated by the record and the ALJ's analysis, Greiner failed to demonstrate any hostility or animus displayed by Macomb County to his various grievances. Any contention by Greiner of a continuing campaign by his supervisor to punish him for his 2011 grievances lacked support given the removal of the 2011 disciplinary actions from his personnel record and the absence of any disciplinary actions taken against him for almost a one-year period following the 2011 incidents. The ALJ found that the problems Greiner encountered in 2012 began with conflicts that arose with his coworkers. The record supports that finding. After the 2011 discipline and grievances were removed from his record, Greiner did not file another grievance until after his June 2012 suspension. While Greiner presented evidence that he experienced conflicts with his supervisor over his ability to obtain assistance from coworkers or mechanical help in completing certain assigned tasks, the issue before the ALJ and MERC did not involve whether Macomb County had good cause to discipline Greiner. Rather, the issue was whether Greiner's involvement in protected activities under PERA was the "motivating cause of his termination[.]" Greiner failed to establish this connection and, therefore, was unable to demonstrate a prima facie case of discrimination.

Further, at the hearing before the ALJ, Greiner asserted that it was his insistence that AFSCME represent him at a continued *Loudermill* hearing that was the cause of his termination. The ALJ determined that Macomb County had no reason to retaliate against Greiner for AFSCME's request to continue the hearing since it was solely within the purview of Macomb

County to decide whether to grant the request. Therefore, other than a certain degree of temporal proximity between Greiner's grievances and the disciplinary actions incurred, there was no factual basis to establish discrimination in violation of PERA. Even when considered from the broader perspective of Greiner's claim that his discharge was related to the threat of his exposure of the overtime fraud that was occurring, there was an absence of evidence that Greiner acted with or on the authority of other employees in reporting the fraud, that he attempted to persuade other employees to join him in reporting the fraud, or that he engaged in any activity related to the fraud that could be considered 'concerted' under PERA.

In affirming the ALJ's decision and recommendation, MERC concurred that Greiner's allegations against Macomb County were silent with regard to any contention that Macomb County or its agents "expressed hostility toward his grievances." After careful review of the record, we have located no evidence contradicting these findings. Further, MERC opined that even if Greiner had demonstrated hostility by Macomb County in relation to any protected activity, such as the filing of grievances engaged in by Greiner, this did not serve to obviate the fact that Greiner's "discharge was not a result of antiunion animus but a result of his violation of the terms of a last change agreement." We have reviewed the last chance agreement, and agree that it provided that Greiner could be terminated immediately under the circumstances alleged. In other words, even if the progressive discipline that Greiner contends was fabricated was, in fact, fabricated, Macomb County was free, under the terms of the last chance agreement, to terminate Greiner's employment based upon a single violation.

For the foregoing reasons, we conclude that the findings and rulings of the ALJ and MERC with regard to the charge against Macomb County were premised on competent, material and substantial evidence, which was not contradicted by Greiner. As such, we conclude MERC did not err by dismissing the charge against Macomb County.[5]

Affirmed.

/s/ William B. Murphy
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[5] Greiner also briefly argues that some of the documents relied upon by the ALJ and MERC were forged. In support, he offers only his own, unsupported opinion that the signatures on the documents, despite purporting to be from the same individual, are not similar. We conclude that, based on the record before this Court, these allegations are insufficient to raise an issue warranting relief.