# STATE OF MICHIGAN

# COURT OF APPEALS

SOUTHFIELD EDUCATION ASSOCIATION
and VELMA SMITH,

        Plaintiffs-Appellants,

v

BOARD OF EDUCATION OF THE
SOUTHFIELD PUBLIC SCHOOLS and
SOUTHFIELD PUBLIC SCHOOLS,

        Defendants-Appellees.

FOR PUBLICATION
July 11, 2017
9:10 a.m.

No.  331087
Oakland Circuit Court
LC No.  2015-146751-CL

Before:  O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Plaintiffs, Southfield Education Association ("the union") and Velma Smith, appeal as of right an order denying plaintiffs' motion for summary disposition on Count I (violation of MCL 380.1248) of plaintiffs' five-count complaint and granting summary disposition in favor of defendants, Board of Education of the Southfield Public Schools and Southfield Public Schools, pursuant to MCR 2.116(I)(2) (judgment for opposing party).  The trial court had previously granted summary disposition of Count II (violation of MCL 380.1249), Count III (violation of the Teachers' Tenure Act (TTA), MCL 38.71 *et seq*.), Count IV (due process), and Count V (mandamus) in favor of defendants pursuant to MCR 2.116(C)(4) (lack of subject matter jurisdiction) and MCR 2.116(C)(8) (failure to state a claim).  We affirm.

Defendants employed Smith for 19 years as a tenured technology teacher.  Smith is certified and qualified to teach technology, and holds endorsements to teach industrial technology in grades K through 12 and educational technology in grades 6 through 12.  Smith taught "PLATO," an online remedial education course offered through the Southfield Regional Academic Campus (SRAC), an alternative high school within defendants' district, during the 2012-2013 and 2013-2014 school years.  For both years, defendants rated Smith's performance as "highly effective."  At the end of the 2013-2014 school year, defendants eliminated the SRAC position and Smith was laid off.

In July 2014, defendants posted a part-time technology position at Birney School, a K through 8 school in defendants' district.  Defendants admit that Smith was qualified for the position.  In fact, she had held the position during the 2010-2011 school year.  However, her

-1-

"effectiveness" was not evaluated under the performance review system implemented before the 2012-2013 school year. Smith applied for the Birney position, but defendants hired an external candidate. That candidate resigned after one year. Defendants reposted the Birney position, claiming that it required endorsements for grades K through 6. On investigation, the union discovered that the class consisted only of students in grades 6 through 8, and Smith remained qualified for the position. Thereafter, defendants interviewed Smith again for the Birney position. Smith was not hired to fill the position. According to plaintiffs, the Birney position remained vacant until defendants hired an external candidate "whose effectiveness was unknown to her former employer."

Plaintiffs brought a five-count complaint in the circuit court, alleging (1) that defendants violated MCL 380.1248 of the Revised School Code (RSC), MCL 380.1 *et seq.*, by failing and/or refusing to recall Smith, (2) that defendants violated MCL 380.1249 when they failed to comply with their own personnel policies requiring Smith's recall, (3) that defendants violated the TTA when they effectively discontinued Smith's continuous employment as a tenured teacher, (4) that defendants violated Smith's due process right to retain her teaching position and tenure status, and (5) that Smith was entitled to a writ of mandamus ordering defendants to reinstate Smith to a full-time technology teaching position. In lieu of filing a responsive pleading, defendants moved for summary disposition under MCR 2.116(C)(4) (subject matter jurisdiction)[1] and (C)(8). Relying in part on this Court's decision in *Summer v Southfield Bd of Ed*, 310 Mich App 660; 874 NW2d 150 (2015), defendants argued that plaintiffs' claims were facially untenable "because, among other reasons, they are premised on a non-existent legal right. Since 2011, there has been no right to recall for tenured teachers under Michigan law." Defendants also argued that plaintiffs had no private right of action under § 1249. Therefore, plaintiffs had failed to state a claim upon which relief could be granted in Counts I, II, III, IV, and V. With respect to Count III, defendants also noted that plaintiff had failed to exhaust her administrative remedies under the TTA when she failed to appeal to the State Tenure Commission (STC), and the trial court therefore lacked subject matter jurisdiction over the claim.

Plaintiffs responded that their position was not that defendants were required to recall Smith, but rather that defendants were required to rehire Smith *unless* there were other candidates who "had an effectiveness rating equal or higher" than Smith's. Because the effectiveness rating of the person hired was unknown, plaintiffs claimed that defendants were required to hire Smith because "there were no other Southfield teachers who could teach that course."

Defendants acknowledged that which applicants were considered for the Birney position would present a factual question, and the trial court denied defendants' motion for summary disposition with respect to Count I. However, the trial court "adopt[ed] the defendants' arguments" with respect to Counts II through V and granted defendants' motion for summary disposition on those four counts.

---

[1] The motion under MCR 2.116(C)(4) pertained to plaintiffs' claim under the TTA (Count III).

After defendants filed an answer to plaintiff's complaint, plaintiffs brought a motion for summary disposition of Count I pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiffs maintained that

> Section 1248(b)(1) is unambiguous about a school board's obligation to base its personnel decisions on teacher effectiveness, with the primary goal of retaining effective teachers following a staffing or program reduction. Southfield has not assigned Smith, a highly effective teacher, to any of the positions for which she is certified and highly qualified to teach that became available as soon as July 2014 and as recently as August 31, 2015.[2]

> By its conduct, Southfield has failed to retain Smith, a highly effective teacher, in violation of Section 1248 of the Revised School Code. Because there is no genuine issue of material fact that Smith is a highly effective teacher and that Southfield failed to recall Smith to available positions for which she was qualified and certified, Smith is entitled to judgment as a matter of law. [Footnote added.]

In opposing plaintiffs' motion, and requesting summary disposition under MCR 2.116(I)(2), defendants again argued that the Legislature's elimination of recall rights for tenured teachers barred plaintiffs' claim as a matter of law. They also argued, for the first time, that even if the Legislature had not eliminated the statutory basis for plaintiffs' claim, plaintiffs' claim was factually unsupported because (1) Smith was not evaluated as "effective or better when she taught" in the technology position at Birney in the 2010-2011 school year, and (2) the position is different than the one for which Smith was rated "highly effective" during the 2012-2013 and 2013-2014 school years.

After a second hearing, the trial court adopted defendants' arguments and denied plaintiffs' motion for summary disposition. Finding defendants entitled to judgment as a matter of law, the trial court granted summary disposition of Count I in favor of defendants under MCR 2.116(I)(2).

## I. VIOLATION OF MCL 380.1248

On appeal, plaintiffs argue that the trial court erred in granting summary disposition in favor of defendants on Count I of their complaint because defendants clearly violated MCL 380.1248, which required defendants to adopt, implement, maintain, and comply with a policy prioritizing retention of effective teachers when recalling a teacher after a layoff or hiring a

---

[2] In the complaint, plaintiffs also alleged violations of MCL 380.1248 for defendants' failure to hire Smith for a full-time technology position at Thompson Academy, another K through 8 school in defendants' district. However, there is no evidence that Smith ever applied for that position, and plaintiffs conceded in the lower court that Smith lacked the required endorsements to qualify for the Thompson position.

teacher after a layoff, and plaintiffs were therefore entitled to judgment as a matter of law. We agree in part and disagree in part.

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Adair v State*, 470 Mich 105, 119; 680 NW2d 386 (2004). A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Summary disposition is warranted under this rule "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court must consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. MCR 2.116(I)(2) provides that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." However, the trial court may not contravene a party's due process rights when granting summary disposition under this provision. *Al-Maliki v LaGrant*, 286 Mich App 483, 489; 781 NW2d 853 (2009).

Resolution of this issue requires that the Court engage in statutory interpretation, an issue of law that is also reviewed de novo. *Cruz v State Farm Mut Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002). The goal of statutory construction is "to discern and give effect to the Legislature's intent." *DiBenedetto v W Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). Courts begin by examining the plain language of the statute. *Id.* When the language is unambiguous, it is presumed "that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *Id.*

MCL 380.1249 requires all Michigan school districts and intermediate school districts and the boards of directors of public school academies to adopt a "performance evaluation system" that assesses teacher effectiveness and performance and provides a detailed set of factors that any school district's performance evaluation system must include. Specifically, § 1249 requires that any performance evaluation system must rate its teachers as falling within one of four classes: (1) "highly effective"; (2) "effective"; (3) "minimally effective"; or (4) "ineffective." MCL 380.1249(1)(c).

MCL 380.1248 requires that school districts focus on retaining effective teachers when making personnel decisions, including decisions on personnel reductions and staffing after a staff reduction, including recalling personnel and hiring personnel. In pertinent part, MCL 380.1248 provides:

> (1) For teachers, as defined in . . . MCL 38.71, all of the following apply to policies regarding personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position, when conducting a recall from a staffing or program reduction or any other personnel determination resulting in the elimination of a position, *or in*

-4-

*hiring after a staffing or program reduction* or any other personnel determination resulting in the elimination of a position by a school district or intermediate school district:

* * *

(b) Subject to subdivision (c), the board of a school district or intermediate school district shall ensure that the school district or intermediate school district adopts, implements, maintains, and *complies with a policy that provides that all personnel decisions . . . are based on retaining effective teachers.* The policy shall ensure that a teacher who has been rated as ineffective under the performance evaluation system under section 1249 is not given any preference that would result in that teacher being retained over a teacher who is evaluated as minimally effective, effective, or highly effective under the performance evaluation system under section 1249. Effectiveness shall be measured by the performance evaluation system under section 1249, and the personnel decisions shall be made based on the following factors:

(*i*) Individual performance shall be the majority factor in making the decision, and shall consist of but is not limited to all of the following:

(A) Evidence of student growth, which shall be the predominant factor in assessing an employee's individual performance.

(B) The teacher's demonstrated pedagogical skills, including at least a special determination concerning the teacher's knowledge of his or her subject area and the ability to impart that knowledge through planning, delivering rigorous content, checking for and building higher-level understanding, differentiating, and managing a classroom; and consistent preparation to maximize instructional time.

(C) The teacher's management of the classroom, manner and efficacy of disciplining pupils, rapport with parents and other teachers, and ability to withstand the strain of teaching.

(D) The teacher's attendance and disciplinary record, if any.

(*ii*) Significant, relevant accomplishments and contributions. This factor shall be based on whether the individual contributes to the overall performance of the school by making clear, significant, relevant contributions above the normal expectations for an individual in his or her peer group and having demonstrated a record of exceptional performance.

(*iii*) Relevant special training. This factor shall be based on completion of relevant training other than the professional development or continuing education that is required by the employer or by state law, and integration of that training into instruction in a meaningful way.

(c) Except as otherwise provided in this subdivision, length of service or tenure status shall not be a factor in a personnel decision described in subdivision (a) or (b). However, if that personnel decision involves 2 or more employees and all other factors distinguishing those employees from each other are equal, then length of service or tenure status may be considered as a tiebreaker. [Emphasis added.]

On appeal, plaintiffs argue that if a school district recalls or hires teachers after implementing a layoff, MCL 380.1248 requires that the school district's decisions reflect the policy goal of maintaining the employment of teachers with a performance rating of effective. Plaintiffs' argument rests on the mandate in MCL 380.1248(1)(b) that all "policies regarding personnel decisions. . . are based on retaining effective teachers." Plaintiffs contend that the Legislature's use of the word "retain" reveals an intent to limit a school district's staffing decisions following a reduction in staffing in order to satisfy the goal of retaining effective teachers. Thus, plaintiffs claim that defendants violated MCL 380.1248 by hiring an external candidate for the Birney position, whose effectiveness rating was unknown, instead of retaining Smith, who was rated highly effective.

Defendants argue to the contrary, suggesting that the Legislature's 2011 repeal of the statutory basis for a right to recall under the TTA, the amendment of the Public Employee Relations Act (PERA), MCL 423.201 *et seq*., to add layoff and recall policies to the prohibited subjects of collective bargaining, and the amendment of the RSC to provide two post-layoff alternatives—recall or hire—evinced a clear legislative intent to make recalls nonactionable under MCL 380.1248. Defendants contend that plaintiffs' proposed construction of the phrase "retaining effective teachers," creating a statutory right to be recalled, would "require one to ignore the plain right given to districts to hire after layoffs, and the other statutory amendments eviscerating recall rights."

In *Baumgartner v Perry Pub Sch*, 309 Mich App 507, 524-531; 872 NW2d 837 (2015), this Court considered the import of § 1248 within the context of teacher layoffs. Although the issue in *Baumgartner* involved jurisdiction, this Court summarized the 2011 legislative tie-barred amendments to the TTA, the RSC, and PERA, which caused a "dramatic shift in the law of teacher layoffs." *Id*. at 512. The *Baumgartner* Court explained that the 2011 amendments

clearly outlined a teacher's rights and a school district's responsibilities in the event that a layoff became necessary. 2011 PAs 100, 101, 102, and 103 work in tandem to (1) bar teacher layoffs from being a subject of collective bargaining agreements, thus preventing teachers from challenging layoff decisions before [the Michigan Employment Relations Commission] as an unfair labor practice under PERA, (2) require that layoff decisions be based on teacher effectiveness, not seniority, and (3) make clear that only the courts—not any administrative agency, including the STC—have jurisdiction over layoff-related claims. [*Id.* at 524.]

2011 PA 101, effective July 19, 2011, repealed MCL 38.105 of the TTA, which had provided, "For a period of 3 years after the effective date of the termination of the teacher's services, a teacher on continuing tenure whose services are terminated because of a necessary reduction in

personnel shall be appointed to the first vacancy in the school district for which the teacher is certified and qualified." 2011 PA 103, among other things, amended PERA to remove layoffs from the collective bargaining process and emphasize that the RSC, not PERA or the TTA, governs teacher layoffs. *Baumgartner*, 309 Mich App at 525.

2011 PA 102 amended the RSC. "Among other things," *Baumgartner* noted, the RSC "governs 'the regulation of school teachers and certain other school employees' and emphasizes that *local school authorities—not state officials*—are primarily responsible for the governance of school districts." *Baumgartner*, 309 Mich App at 526, quoting 1976 PA 451, title, as amended by 1995 PA 289 (emphasis by *Baumgartner*). The Court explained how 2011 PA 102 fit within the relevant legal framework:

> 2011 PA 102 is part of this broader legal framework and enacted a comprehensive revision of the Revised School Code's treatment of teacher layoffs through the addition of two new sections, MCL 380.1248 and MCL 380.1249. Section 1249 requires all Michigan school districts and intermediate school districts and the boards of directors of public school academies to adopt a "performance evaluation system" that assesses teacher effectiveness and performance and provides a detailed set of factors that any school district's performance evaluation system must include . . . .
>
> Section 1248 then mandates that all "policies regarding personnel decisions when conducting a *staffing or program reduction* "—i.e., *layoffs*—must be conducted on (1) the basis of the performance evaluation system the school district developed in compliance with § 1249; and (2) other specific factors listed in § 1248 . . . .
>
> In other words, if layoffs become necessary, § 1248 requires school districts to base their decision of which teachers to lay off on the effectiveness of each teacher. So, after conducting a performance evaluation using the criteria outlined in § 1249, a school district must rank its teachers in order, based on their success (or lack thereof) in the performance evaluation. The teachers who received the lowest performance ranking ("ineffective") will be laid off before those who received higher performance rankings. The statutory mandate anticipates that talented and more effective teachers will be retained, while mediocre and ineffective teachers will be laid off. [*Baumgartner*, 309 Mich App at 526-528.]

Under the clear language of § 1248 and the interpretation of the 2011 amendments set forth in *Baumgartner*, all policies regarding personnel decisions when conducting a recall from a staffing or program reduction, or in hiring after a staffing or program reduction, must be conducted on (1) the basis of the performance evaluation system the school district developed in compliance with § 1249, and (2) other specific factors listed in § 1248. See MCL 380.1248(1)(b)(*i*) through (*iii*). Similar to the Court's pronouncement in *Baumgartner* with respect to layoffs, the statutory mandate anticipates that talented and more effective teachers will be recalled or hired, while ineffective teachers will not. A school district must consider the

relative effectiveness ratings of candidates for open teaching positions, whether as part of a recall *or a new hire* after a staffing or program reduction.

However, while we agree with plaintiffs' interpretation of § 1248, we cannot agree with plaintiffs' assertion that defendants violated § 1248 when they hired an external candidate for the Birney position. Smith simply could not claim an effectiveness rating related to the available position, and the school district was therefore not required to consider whether she would be relatively more or less effective than any other candidate for the position.

Nothing in the language of § 1248 suggests that a teacher's effectiveness evaluation in teaching one subject requires that teacher's recall or rehire to teach a different subject. Indeed, several of the factors on which personnel decisions "shall be based" are position specific. Further, to interpret § 1248 as requiring a school district to recall or rehire a teacher to a specific position, for which she may be qualified but has not been proven effective, is contrary to the purpose of the 2011 Legislative Amendments. Again, as we explained in *Baumgartner*, 309 Mich App at 526, the RSC "emphasizes that *local school authorities—not state officials—are* primarily responsible for the governance of school districts." The Legislature has left school districts with the authority to ensure that each available position is matched with the most effective teacher for that particular position. It is not for this Court to place limits on the school district's authority that the Legislature has not.

Plaintiffs presented documentary evidence that Smith was certified and qualified for the Birney position. However, while plaintiffs claim that Smith received an effectiveness rating of "highly effective" on her 2012-2013 and 2013-2014 performance evaluations, plaintiffs have offered no evidence to rebut defendants' assertion that Smiths' effectiveness rating was received while teaching a class substantially different from the Birney position. Smith was rated "highly effective" during two school years in which she taught PLATO, an online remediation course requiring individualized, interactive instruction at an alternative high school for credit-deficient students and students at high risk of dropping out. The PLATO position was eliminated, and Smith sought a part-time teaching position at Birney Middle School. Smith was indisputably qualified for the Birney position, having taught the same class during the 2010-2011 school year. However, she did not receive an effectiveness evaluation pursuant to § 1249 for that school year. The Birney position is at a middle school, while the PLATO position required working with high school students. And unlike the PLATO position, the Birney position involves whole classroom instruction, rather than individualized instruction, on various subjects within the field of technology. Smith's effectiveness in that position is therefore a matter of speculation. Plaintiffs cannot show that Smith had obtained an effectiveness rating triggering the school district's obligation under § 1248 to engage in a comparison. Summary disposition in favor of defendants was therefore appropriate. See *Libralter Plastics, Inc v Chubb Group of Ins Companies*, 199 Mich App 482, 486; 502 NW2d 742 (1993) ("[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact.").

The trial court did not err in granting summary disposition under MCR 2.116(I)(2) in favor of defendants because no genuine issue of material fact exists and, with respect to plaintiffs' claimed violation of § 1248, defendants are entitled to judgment as a matter of law.

## II. VIOLATION OF MCL 380.1249

Next, plaintiffs argue that the trial court erred when it granted defendants' motion for summary disposition of Count II of plaintiffs' complaint because defendants failed to comply with their own policy of retaining highly effective teachers as required by MCL 380.1249. We disagree.

With respect to Count II of plaintiffs' complaint, the trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(8). "A motion brought under (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings." *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010). Summary disposition under MCR 2.116(C)(8) is appropriate when "[t]he opposing party has failed to state a claim on which relief can be granted."

MCL 380.1249(1) requires the board of a public school district to "adopt and implement for all teachers and school administrators a rigorous, transparent, and fair performance evaluation system." MCL 380.1249(1)(d) requires that the evaluations be used, at a minimum, to inform decisions regarding (1) the effectiveness of teachers and school administrators, ensuring that they are given ample opportunities for improvement, and (2) promotion, retention, and development of teachers and school administrators, including providing relevant coaching, instruction support, or professional development. MCL 380.1249(1)(d)(*i*) and (*ii*). Plaintiffs conceded in their complaint that defendants' performance evaluation system complies with MCL 380.1249. They also conceded that they were not challenging defendants' decision to lay off Smith when her position was eliminated. However, they argue that defendants violated § 1249(1)'s mandate that their "performance evaluation system [be used] to retain effective teachers such as Plaintiff Smith."

In *Summer*, 310 Mich App at 676, this Court explicitly held that there was no private cause of action under § 1249. Relying on *Garden City Ed Ass'n v Sch Dist of City of Garden City*, 975 F Supp 2d 780 (ED Mich, 2013), the Court explained:

> As observed by the *Garden City* court, it is evident that the Legislature provided a detailed enforcement scheme to ensure compliance with the Revised School Code, including compliance with § 1249. Notably, the plain language of § 1249 includes no reference to a private right of action. "[W]here a statute creates a new right or imposes a new duty unknown to the common law and provides a comprehensive administrative or other enforcement mechanism or otherwise entrusts the responsibility for upholding the law to a public officer, a private right of action will not be inferred." Accordingly, given the extensive enforcement mechanisms already provided in the Revised School Code, we decline to infer a private right of action in MCL 380.1249 and conclude that the trial court properly determined that MCL 380.1249 does not establish a private cause of action under which plaintiff may bring the instant case. [*Summer*, 310 Mich App at 676 (citations omitted).]

This Court held, however, that this did not foreclose a teacher from challenging a school district's failure to adhere to the procedures set forth in § 1249 when that challenge was part of a

claim brought under § 1248. *Id.* at 681. Reasoning that the Legislature specifically intended to allow teachers to challenge layoff decisions that were based on performance evaluations that did not comply with the requirements under § 1249, the *Summer* Court explained as follows:

> [B]ased on the specific language of § 1248, the requirement that the school district must utilize a "performance evaluation system" in compliance with § 1249 as it evaluates teachers and makes layoff decisions is one of the requirements with regard to which a teacher may assert a private cause of action under § 1248(3). Accordingly, if a school district lays off a teacher because she is deemed ineffective, but the school district measured the teacher's effectiveness using a performance evaluation system that did not comply with § 1249 (e.g., if a school district failed to use a "rigorous, transparent, and fair performance evaluation system," MCL 380.1249(1)), or made a personnel decision that was not based on the factors delineated in MCL 380.1248(1)(b)(*i*)-(*iii*), the teacher could assert a cause of action under § 1248(3) based on a violation of § 1248(1)(b) . . . . [*Id.* at 679-680 (citation footnote omitted).]

Pursuant to *Summer*, plaintiffs' claim under § 1248 in Count I properly alleges a violation of § 1249. However, plaintiffs are not entitled to a separate cause of action under § 1249. We are bound by *Summer*. MCR 7.215(J)(1). Summary disposition of Count II under MCR 2.116(C)(8) was therefore proper.

### III. VIOLATION OF THE TEACHERS' TENURE ACT AND DUE PROCESS

Plaintiffs also argue that the trial court erred when it granted defendants' motion for summary disposition of Count III of plaintiffs' complaint because defendants violated the TTA by failing and/or refusing to recall Smith to positions for which she is certified and highly qualified. We disagree.

Although the trial court, in its written order, did not explicitly state its statutory basis for granting summary disposition in favor of defendants with respect to Count III of plaintiffs' complaint, defendants requested summary disposition of this count under MCR 2.116(C)(4). Defendants argued that the STC had jurisdiction over claims arising under the TTA, and plaintiffs were required to exhaust their administrative remedies before they could pursue them in the circuit court. The trial court seems to have agreed with defendants' argument that the STC had exclusive jurisdiction over plaintiffs' claim. Explaining its decision to grant defendants' motion for summary disposition of Counts II through V at the first summary disposition hearing, the trial court stated: "(C)(4) pertains only to one count, I think. And it's granted for that reason."

"We review a trial court's decision on a motion for summary disposition based on MCR 2.116(C)(4) de novo to determine if the moving party was entitled to judgment as a matter of law, or if affidavits or other proofs demonstrate there is an issue of material fact." *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). Summary disposition is appropriate under MCR 2.116(C)(4) when "[t]he court lacks jurisdiction of the subject matter." Whether a court has subject-matter jurisdiction to decide a case is a question of law that this Court also

reviews de novo. *Trostel, Ltd v Dep't of Treasury*, 269 Mich App 433, 440; 713 NW2d 279 (2006).

To the extent the trial court relied on MCR 2.116(C)(4) as its basis for summary disposition, we find that it erred. Plaintiffs allege that Smith, as a tenured teacher, possessed the right to "continuous employment" under MCL 38.91 and that defendant violated the TTA by "failing and/or refusing to recall her to positions for which she is certified and qualified to teach." However, the essence of plaintiffs' argument is that defendants "fail[ed] to comply with sections 1248 and 1249 of the [RSC] to retain or continue the employment of a highly effective teacher." In *Baumgartner*, 309 Mich App at 521, this Court stated that:

> The STC's "jurisdiction and administrative expertise is limited to questions traditionally arising under the [TTA]," and it does not possess jurisdiction over disputes that arise under and are governed by separate legislative acts. [Citation omitted].

Therefore, the trial court erroneously determined that it did not have jurisdiction because plaintiffs had failed to exhaust their administrative remedies.

However, "[a] trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Michigan Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). We find reversal of the trial court's decision on Count III of plaintiffs' complaint unnecessary because summary disposition of Count III was appropriate under MCR 2.116(C)(8).

Plaintiffs argue that Smith was deprived of her vested property right to continuous employment without due process of law. Plaintiffs have not argued that defendants' elimination of Smith's teaching position or defendants' decision to layoff Smith was contrary to law or policy. And plaintiffs concede that Smith has no right to mandatory recall. However, plaintiffs suggest that Smith maintained a right to continuous employment under MCL 38.91(1), which provides:

> After the satisfactory completion of the probationary period, a teacher is considered to be on continuing tenure under this act. A teacher on continuing tenure shall be employed continuously by the controlling board under which the probationary period has been completed and *shall not be dismissed or demoted* except as specified in this act. [Emphasis added.]

Because the Legislature left this section of the TTA unchanged when it implemented the July 2011 amendments and repealed the statutory right to recall, plaintiffs argue that the Legislature "clearly intended for an effective teacher to maintain her right to continuous employment." Therefore, according to plaintiffs, defendants "cannot fail or refuse to recall Plaintiff Smith without due process of law simply because the statutory right to recall has been eliminated."

We are not persuaded by plaintiffs' arguments here. Smith has no due process right to recall, and the right of continuous employment for tenured teachers simply does not apply in this case. A public employee that has received tenure through state law has a property interest as defined by state law. *Cleveland Bd of Ed v Loudermill*, 470 US 532, 542; 105 S Ct 1487; 84 L

Ed 2d 494 (1985). However, a state law that grants a property interest may define the boundaries of that property interest. *Bd of Regents v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972). In other words, a state law that creates the interest can define what the interest is, how it may be gained, and how it may be taken away. Considering the TTA, our Supreme Court has stated that "the very purpose of the act is to protect tenured teachers from being demoted or discharged unless the board can show just and reasonable cause, and only after written charges are filed and the teacher has been furnished with notice of the date of a hearing." *Tomiak v Hamtramck Sch Dist*, 426 Mich 678, 688-689; 397 NW2d 770 (1986). Although the TTA initially provided a right to recall in tenured teachers, that right was removed with the recall of § 38.105 via 2011 PA 101. In *Baumgartner*, 309 Mich at 530, we explained that following the repeal of § 38.105, "[t]he 'general purpose' of the TTA no longer includes teacher layoffs, which are now governed by the Revised School Code."

A layoff because of a necessary reduction in personnel is not a discharge or demotion. *Id*. at 529 (noting that it is impossible to equate "discharge" under the TTA with "layoff," because "the two terms are separate and distinct."), citing *Tomiak*, 426 Mich at 688.[3] "Thus, by definition, a school that lays off a teacher does not 'demote' that teacher in the context of the TTA." *Baumgartner*, 309 Mich App at 529. With respect to layoffs, it has long been established under Michigan law that a tenured teacher is not given any protection of his or her employment from a bona fide reduction in personnel. *Chester v Harper Woods Sch Dist*, 87 Mich App 235, 243-244; 273 NW2d 916 (1978). Therefore, no process is due a tenured teacher who is laid off unless the reduction in force is not bona fide. Plaintiffs have not alleged or argued that the elimination of Smith's position was not bona fide, nor do they suggest that the layoff was a subterfuge to avoid the protections of the TTA. Therefore, plaintiffs have failed to state a claim for due process violations in this case.

## IV. STANDING ISSUES

Next, plaintiffs argue that the trial court erred by "dismissing [the union] from the action on the ground that the union did not have standing" in this matter. Generally, this Court reviews questions of standing de novo. *Barclae v Zarb*, 300 Mich App 455, 467; 834 NW2d 100 (2013). However, we decline to consider the issue of standing here because it is not properly before this Court.

In the lower court, defendants challenged the union's standing with respect to plaintiffs' claims under MCL 380.1248, MCL 380.1249, and the TTA in its motion for summary disposition, and again with respect to MCL 380.1248 in their answer in opposition to plaintiffs' motion for summary disposition. However, defendants did not bring a motion for summary disposition under MCR 2.116(C)(5) ("The party asserting the claim lacks the legal capacity to sue."). Further, there is no evidence in the record that the trial court dismissed the union as a party for lack of standing. Thus, there is no adverse action from which plaintiffs are aggrieved.

---

[3] Although *Tomiak* concerned the repealed MCL 38.105, the statute addressed layoffs because of a necessary reduction in personnel and, therefore, is analogous to the present case.

In the absence of a ruling by the trial court, this Court has nothing to review. *People v Buie*, 491 Mich 294, 311; 817 NW2d 33 (2012).

On appeal, defendants acknowledge that the trial court did not squarely address defendants' argument that the union lacked standing to assert claims under MCL 380.1248 and MCL 380.1249, and suggest that this Court should decide the issue because it "involves a straightforward legal issue." Defendants could have raised this issue on cross-appeal, MCR 7.207, but failed to do so. Accordingly, the issue of standing is not properly before this Court. *Shipman v Fontaine Truck Equip Co*, 184 Mich App 706, 714; 459 NW2d 30 (1990).

## V. WRIT OF MANDAMUS

Finally, plaintiffs contend that the trial court erred when it denied plaintiffs' request for a writ of mandamus because plaintiffs pleaded the required elements in their complaint. We disagree.

A writ of mandamus is an extraordinary remedy that will only be issued if (1) the party seeking the writ has a clear legal right to the performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result. *Barrow v Detroit Election Comm*, 305 Mich App 649, 661-662; 854 NW2d 489 (2014). The burden of proving entitlement to a writ of mandamus is on the plaintiff. *Citizens for Protection of Marriage v Bd of State Canvassers*, 263 Mich App 487, 492; 688 NW2d 538 (2004).

This Court reviews a trial court's grant or denial of a writ of mandamus for an abuse of discretion. *Wilcoxon v City of Detroit Election Comm*, 301 Mich App 619, 630; 838 NW2d 183 (2013). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006). However, whether the first two elements required for issuance of a writ of mandamus are present is a question of law, which this Court reviews de novo. *Coal for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 367; 820 NW2d 208 (2012).

Plaintiffs' argument with respect to this issue is cursory at best. Plaintiffs merely announce that they pleaded the elements of a mandamus action and assert that they had no other adequate remedy at law. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007). Where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by the Court. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Further, plaintiffs have an adequate legal remedy as reflected in Count I of their complaint—plaintiffs sought Smith's reinstatement to a technology teaching position in the school district pursuant to MCL 380.1248(3). The trial court did not abuse its discretion by denying plaintiffs' request for a writ of mandamus.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens