*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIMOTHY SEBALD,

       Plaintiff-Appellant,

v

BELDING AREA SCHOOLS and BELDING AREA
SCHOOLS BOARD OF EDUCATION,

       Defendants-Appellees.

UNPUBLISHED
June 10, 2021

No. 353219
Ionia Circuit Court
LC No. 2019-033850-CL

Before: K.F. KELLY, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

In this teacher-tenure case, plaintiff, Timothy Sebald, appeals as of right the trial court's order granting defendants Belding Area Schools and Belding Area Schools Board of Education's motion for summary disposition under MCR 2.116(C)(10) and denying plaintiff's motion for summary disposition. We affirm.

Plaintiff was hired by Belding area schools in 1999 and taught various subjects throughout his tenured employment. Prior to the 2016-2017 school year, Belding schools adopted a teacher evaluation model, as it was required to do, that differed from the prior model used. During the 2016-2017 school year, plaintiff primarily taught alternative education at Belding High School. The high school principal, Michael Ostrander, observed plaintiff's teaching four times throughout the school year and provided written observations and feedback to plaintiff, indicating areas he felt plaintiff needed to improve upon. At the conclusion of that school year, plaintiff received an evaluation of "minimally effective." Also at the conclusion of the school year, it was determined that layoffs were necessary due to declining student enrollment and budget constraints. Plaintiff was one of several teachers laid off by the Belding school district. Plaintiff was kept on a recall list for two years.

There were no positions available for plaintiff to teach during the 2017-2018 school year and, when two positions for which plaintiff was qualified to teach opened up for the 2018-2019 school year, plaintiff applied for the positions. He was not hired to fill those positions. Two more position for which plaintiff was qualified to teach opened for the 2019-2020 school year and the

-1-

Belding school district again hired persons other than plaintiff to fill the positions. Plaintiff thereafter filed the instant complaint, asserting that defendants' failure to reinstate him into the open teaching positions violated the Revised School Code.

Defendants moved for summary disposition under MCR 2.116(C)(10), asserting that plaintiff's 2016-2017 evaluation was properly performed under the Revised School Code and that they were not required to recall plaintiff rather than hiring new teachers. Plaintiff filed a counter-motion for summary disposition under MCR 2.116(C)(9) and (10) contending that the Revised School Code provides that he, with a "minimally effective" performance rating, is entitled to recall/hiring over persons who had no prior performance rating under the revised School Code. Plaintiff also asserted that defendant's performance evaluation system did not comply with the Revised School Code. The trial court agreed with defendants and granted their motion for summary disposition, while denying plaintiff's motion for summary disposition. This appeal followed.

## I. Standard of Review

We review de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion brought under MCR 2.116(C)(10), tests the factual sufficiency of a claim. *Id*. at 160.

> When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. (internal citations and quotation marks omitted)]

Matters of statutory interpretation are issues of law that are also reviewed de novo. *Southfield Ed Ass'n v Bd of Ed of the Southfield Pub Sch*, 320 Mich App 353, 362; 909 NW2d 1 (2017).

> The goal of statutory construction is to discern and give effect to the Legislature's intent. Courts begin by examining the plain language of the statute. When the language is unambiguous, it is presumed that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. [ (quotation marks and citations omitted).]

## II. Issues on appeal

On appeal, plaintiff contends that defendants violated his statutory rights under the Revised School Code, specifically MCL 380.1248 and MCL 380.1249. According to defendant, performance evaluations of teachers must comply with those sections and that defendants' performance evaluation system and its recall/hiring decisions, as applied to plaintiff, violated the basic requirements set by statute. We address plaintiff's arguments with respect to each statutory provision, beginning with MCL 380.1249.

-2-

## A. MCL 380.1249

MCL 380.1249 governs teacher evaluation systems. A school district must evaluate its teachers "at least annually while providing timely and constructive feedback." MCL 380.1249(1)(a). MCL 380.1249(2)(d) provides that "[t]he performance evaluation system must include a midyear progress report for a teacher who is in the first year of the probationary period . . . , or who received a rating of minimally effective or ineffective in his or her most recent annual year-end evaluation." Section 1249(2)(e) provides, in relevant part, that evaluators must review a teacher's lessons plans before each observation and that school administrators must provide feedback to the teacher within 30 days of the observation. And § 1249(2)(f) requires that, beginning in the 2016-2017 school year, each district must have adopted and implemented a teacher evaluation system included in a list of approved systems compiled by the Department of Education. See also MCL 380.1249(5).

Plaintiff argues that his 2016-2017 evaluation did not comply with MCL 380.1249 in four ways: (1) he was not afforded a vigorous, transparent, and fair evaluation process; (2) he was not given ample opportunities to improve; (3) Belding high school principal Ostrander did not review his lesson plans; and (4) he did not receive a midyear progress report. Each argument lacks merit.

First, defendants presented evidence that their evaluation of plaintiff was rigorous, transparent, and fair. As to rigor, there is no evidence, and plaintiff does not contest, that the evaluation system defendants used beginning in the 2016-2017 school year was not approved by the Department of Education or that it was not rigorous. To support their assertion that plaintiff's evaluation was transparent and fair, defendants provided evidence that plaintiff and Ostrander were trained on the evaluation model and that plaintiff had the opportunity to ask questions concerning the model. Defendants also demonstrated that Ostrander observed plaintiff in his classroom on four occasions during the 2016-2017 school year. Ostrander completed forms during and after his observations that detailed specific matters observed, areas of focus, and feedback concerning goals and areas that need work. The feedback detailed in the first two observation forms included encouragement by Ostrander for plaintiff to increase interaction and relationship building with students, engaging the students more, creating a positive atmosphere for success, and eliminating/reducing distractions. Defendants presented an improvement plan, developed by plaintiff and Ostrander on March 1, 2017, and signed by both the same day, which specified four goals that plaintiff was to work toward. The goals centered around teacher-student relationships, classroom management, and quality assessments. The goals were clearly set forth and provided plaintiff with the opportunity to respond to specific observations and feedback. The evaluation system appears to be fair and transparent.

Plaintiff places significant emphasis on his second argument: that defendants did not give him ample opportunities to improve, in violation of § 1249(1)(d)(*i*). Specifically, plaintiff highlights that the improvement plan was signed on March 1 and that Ostrander's next observation occurred on March 13, two weeks later. Plaintiff also highlights that he not was advised during the observation process that he was tracking toward a rating of minimally effective. However, Ostrander averred and testified that it would have been against the design of the evaluation model to tell plaintiff which rating he was tracking toward. Ostrander also swore in an affidavit that "the goals were not new." He swore that they reflected the targets and directives that he gave plaintiff in fall 2016. And he swore that plaintiff should have been able to make progress on the goals

immediately. In fact, he swore that "[t]he goals were designed such that it would not take a substantial amount of time to demonstrate improvement." For example, according to Ostrander, plaintiff could have made immediate changes to his classroom management system to maximize instructional time. Instead, plaintiff regressed from the goals.

Plaintiff testified in his deposition that he was aware that he was given directives arising from the first three observations, which also involved classroom management, student-teacher relationship, and academic integrity issues. In other words, plaintiff had ample opportunities to improve. The record is clear that plaintiff knew for months what he needed to improve and that he himself participated in crafting goals for which he could immediately show progress toward.

Plaintiff's third argument concerning how his 2016-2017 evaluation did not comply with MCL 380.1249 (that Ostrander failed to review his lesson plans before his observations, as he was required to do by § 1249(2)(e)(*i*)) is directly refuted by Ostrander's deposition testimony that he reviewed all teachers' lessons plans on an ongoing basis. Plaintiff points to no evidence to support his position or contradict Ostrander's testimony.

Plaintiff's last challenge concerning his 2016-2017 evaluation's statutory compliance is that he received inadequate feedback and should have been provided a midyear progress report and face-to-face meetings. As to feedback, defendants presented Ostrander's notes from his four observations of plaintiff's classroom during the 2016-2017 school year. Each shows the date that the report was completed. And each reflects that plaintiff responded, sometimes at length, to Ostrander's questions and observations. The reports reflect that Ostrander provided additional, optional feedback for two of the four evaluations. Plaintiff does not establish that the provided feedback was insufficient. Moreover, section 1249(2)(e)(*v*) specifically mandates only that districts provide teachers with feedback within 30 days of classroom observations. Plaintiff does not argue that defendants failed to do this, and the record is clear that they did.

Concerning a midyear progress report, MCL 380.1249(2)(d) mandates that districts must provide a midyear progress report only for a teacher in their first year and for teachers "who received a rating of minimally effective or ineffective in his or her most recent annual year-end evaluation." As plaintiff highlights and the evidence demonstrates, plaintiff did not have a minimally effective or ineffective rating in his most recent annual year-end evaluation. In 2015-2016, he was rated as "effective." There was thus no requirement for a midyear progress report.

Lastly, plaintiff has provided no authority suggesting that face-to-face meetings are statutorily required. In MCL 380.1249(5), the Legislature specifically delegated the promulgation of a list of approved evaluation models to the Department of Education. MCL 380.1249(5). Section 1249(2) specifies several specific requirements for teacher performance evaluation systems, but it says nothing about face-to-face meetings. The Legislature appears to have delegated many details of what constitutes a proper evaluation system to the Department of Education and local school districts.

B. MCL 380.1248

MCL 380.1248 governs personnel decisions involving the elimination of teacher positions, the recall of teachers, and the hiring of teachers after a staffing reduction. It mandates that, in

making these decisions, a school district cannot make length of service the primary or determining factor. MCL 380.1248(1)(a). Section 1248(1)(b) requires districts to implement a policy for such decisions that makes individual teacher performance the majority factor. It provides that teachers rated "ineffective" under the performance evaluation system created under § 1249 must not be given preference over teachers rated minimally effective, effective, or highly effective under that system. MCL 380.1248(1)(b). The same subsection provides a list of additional factors that shall be included in a teacher's individual performance:

> (*i*) Individual performance shall be the majority factor in making the decision, and shall consist of but is not limited to all of the following:
>
> (A) Evidence of student growth, which shall be the predominant factor in assessing an employee's individual performance.
>
> (B) The teacher's demonstrated pedagogical skills, including at least a special determination concerning the teacher's knowledge of his or her subject area and the ability to impart that knowledge through planning, delivering rigorous content, checking for and building higher-level understanding, differentiating, and managing a classroom; and consistent preparation to maximize instructional time.
>
> (C) The teacher's management of the classroom, manner and efficacy of disciplining pupils, rapport with parents and other teachers, and ability to withstand the strain of teaching.
>
> (D) The teacher's attendance and disciplinary record, if any.
>
> (*ii*) Significant, relevant accomplishments and contributions. This factor shall be based on whether the individual contributes to the overall performance of the school by making clear, significant, relevant contributions above the normal expectations for an individual in his or her peer group and having demonstrated a record of exceptional performance.
>
> (*iii*) Relevant special training. This factor shall be based on completion of relevant training other than the professional development or continuing education that is required by the employer or by state law, and integration of that training into instruction in a meaningful way. [MCL 380.1248(1)(b).]

Section 1248(3) provides that:

> If a teacher brings an action against a school district or intermediate school district based on this section, the teacher's sole and exclusive remedy shall be an order of reinstatement commencing 30 days after a decision by a court of competent jurisdiction. The remedy in an action brought by a teacher based on this section shall not include lost wages, lost benefits, or any other economic damages.

Plaintiff does not, on appeal, advance any argument in regard to his discipline record, his contributions, or any of the other enumerated factors in § 1248(1)(b). Instead, plaintiff's argument under this section rests on this Court's decision in *Southfield*, 320 Mich App at 353. In *Southfield*,

320 Mich App at 357, the defendants had employed the plaintiff teacher for 19 years as a tenured technology teacher. The plaintiff (Smith) was certified to teach technology. *Id*. She taught an online remedial education course in a high school alternative education program.[1] *Id*. After Smith was rated highly effective for two years, at the end of the 2013-2014 school year, the defendants eliminated her position. *Id*. The following school year, the defendants posted a part-time middle school technology teaching position. Smith had held that position during the 2010-2011 school year. *Id*. "However, her 'effectiveness' was not evaluated under the performance review system implemented before the 2012-2013 school year." *Id*. at 357-358. Although Smith applied for the new position, the defendants hired an external candidate. *Id*. at 358. Smith sued, alleging that the defendants violated § 1248. *Id*.

This Court held that the defendants did not violate § 1248 when they hired an external candidate instead of recalling Smith. *Id*. at 369. Smith "simply could not claim an effectiveness rating related to the available position, and the school district was therefore not required to consider whether she would be relatively more or less effective than any other candidate for the position." *Id.* This Court explained:

> Nothing in the language of § 1248 suggests that a teacher's effectiveness evaluation for teaching one subject requires that teacher's recall or rehire to teach a different subject. Indeed, several of the factors on which personnel decisions "shall be based" are position specific. Further, to interpret § 1248 as requiring a school district to recall or rehire a teacher to a specific position for which she may be qualified but has not been proven effective is contrary to the purpose of the 2011 legislative amendments. Again, as we explained in *Baumgartner*[ *v Perry Pub Sch*], 309 Mich App [507,] 526[; 872 NW2d 837 (2015)], the RSC "emphasizes that local authorities—not state officials—are primarily responsible for the governance of school districts." The Legislature has left school districts with the authority to ensure that each available position is matched with the most effective teacher for that particular position. It is not for this Court to place limits on the school district's authority that the Legislature has not. [*Id*. at 368.]

This Court continued:

> Plaintiffs presented documentary evidence that Smith was certified and qualified for the Birney position.[2] However, while plaintiffs claim that Smith received an effectiveness rating of "highly effective" on her 2012-2013 and 2013-2014 performance evaluations, plaintiffs have offered no evidence to rebut defendants' assertion that Smith's effectiveness rating was received while teaching a class substantially different from the class to be taught in the Birney position. Smith was rated "highly effective" during two school years in which she taught PLATO, an online remediation course requiring individualized, interactive

---

[1] It appears that the plaintiff taught alternative education classes very similar to plaintiff in this case, using a different online instructional system. See *Southfield*, 320 Mich App at 357.

[2] The middle school technology position.

instruction at an alternative high school for credit-deficient students and students at high risk of dropping out. The PLATO position was eliminated, and Smith sought a part-time teaching position at Birney Middle School. Smith was indisputably qualified for the Birney position, having taught the same class during the 2010-2011 school year. However, she did not receive an effectiveness evaluation pursuant to § 1249 for that school year. The Birney position is at a middle school, while the PLATO position required working with high school students. And unlike the PLATO position, the Birney position involved whole classroom instruction, rather than individualized instruction, on various subjects within the field of technology. Smith's effectiveness in that position was therefore a matter of speculation. Plaintiffs cannot show that Smith had obtained an effectiveness rating triggering the school district's obligation under § 1248 to engage in a comparison. Summary disposition in favor of defendants was therefore appropriate. [*Id*. at 368-369.]

Notably, the *Southfield* plaintiff and plaintiff here brought forth very similar teaching histories, each teaching classes that involved an online, student-specific curriculum that involved little direct or whole class instruction. And both sought positions that were instructor-driven. While plaintiff taught one Social Studies class in the 2016-2017 school year and Ostrander's fourth observation of plaintiff occurred in this class, plaintiff primarily taught alternative education classes during the 2016-2017 school year.

In addition, both the *Southfield* plaintiff (Smith) and plaintiff here did not have an effectiveness rating under a model compliant with § 1249 in the subject that they sought to be recalled to. Thus, plaintiff's evaluations from school years before 2016-2017 are only minimally relevant because they were conducted under a different model that was not compliant with § 1249. Also of note, although Smith presented evidence that she was previously rated highly effective; plaintiff presented evidence that he was previously rated effective. There is no indication that Smith was ever rated minimally effective, as plaintiff was, under a compliant evaluation model, yet the Court *still* found no violation of § 1248 in *Southfield*.

Plaintiff is correct that § 1248(1)(b) provides that, as to a staffing decision, an ineffective teacher shall not be given preference over a minimally effective, effective, or highly effective teacher. See MCL 380.1248(1)(b). Plaintiff also submitted evidence that he was rated "effective" in the years before to 2016-2017. However, as this Court discussed in *Southfield*, 320 Mich App at 368-369, the Legislature's intent in regard to § 1248 (and § 1249) was to grant local school districts wide latitude in making certain personnel decisions, like recalling teachers.

Section 1248(1)(b) provides that effectiveness shall be measured by the performance evaluation system under § 1249. It also expressly mandates that ineffective teachers shall not be given preference over more effective teachers, but leaves additional details up to the individual school district. There is no stated requirement that minimally effective teachers shall be given preference over previously unevaluated teachers. Notably, however, there is a requirement that districts implement a staffing policy ensuring that personnel decisions "are based on retaining *effective* teachers." MCL 380.1248(1)(b) (emphasis added). Reading these two sentences of § 1248(1)(b) together, it appears that the Legislature mandated that local districts implement specific staffing polices on some topics, including the fate of "ineffective" teachers. But at the same time,

it intended for the remainder of the details of staffing policies to be left to local officials. In other words, there is a gray area in the statute. And plaintiff does not present an argument as to why this Court should seek to fill in the blanks that the Legislature appears to have intentionally left to be filled in by local officials. Accordingly, plaintiff is not entitled to reinstatement under § 1248(3).

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto
/s/ Anica Letica