*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERICA KELLEY,

        Plaintiff-Appellant,

v

JUSTIN WILLIAM EATON and HUSSMAN CORPORATION,

        Defendants,

and

MEEMIC INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
April 25, 2019

No. 341914
Oakland Circuit Court
LC No. 2016-151057-NI

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

Plaintiff, Erica Kelley, appeals as of right from a stipulated order dismissing her complaint against defendants Justin William Eaton and Hussman Corporation ("Hussman"). On appeal, however, plaintiff challenges only the trial court's earlier order granting a motion for summary disposition made by defendant MEEMIC Insurance Company ("MEEMIC"), which resulted in dismissal of plaintiff's claim against MEEMIC for personal protection insurance ("PIP") benefits. We affirm.

Plaintiff argues that the trial court erred when it granted MEEMIC's motion for summary disposition wherein MEEMIC maintained it was entitled to rescind the automobile insurance policy it issued to plaintiff on the ground that plaintiff mispresented the identity of her employer on her insurance application. Plaintiff contends this was error because her misrepresentation was not a material misrepresentation and was not intentional. We disagree.

## I. PRESERVATION OF ISSUE

"An issue is preserved for appellate review if it was raised in, and decided by, the trial court." *Nat'l Wildlife Federation v Dep't of Environmental Quality (No 2)*, 306 Mich App 369, 380; 856 NW2d 394 (2014). In the trial court, plaintiff argued that MEEMIC's motion for summary disposition should be denied because (1) despite her misrepresentation regarding the identity of her employer at the time she completed the insurance application, she was still eligible for MEEMIC insurance as an "employee" of the Michigan Department of Education when she submitted her application to MEEMIC, (2) her misrepresentation was not intentional because she still considered herself an employee of St. John Providence at the time, and (3) MEEMIC's underwriting guidelines should be construed against MEEMIC because they were ambiguous. The trial court rejected plaintiff's arguments, and it granted MEEMIC's motion for summary disposition because plaintiff had "made a material misrepresentation," and the court did not find "that [plaintiff] would have qualified [for MEEMIC insurance] under her current job" (i.e., plaintiff's employment with the Michigan Primary Care Association).

Therefore, plaintiff has preserved those specific arguments for appellate review. However, plaintiff did not argue in the trial court that MEEMIC's motion for summary disposition should have been denied because MEEMIC failed to produce a copy of its underwriting guidelines that were in effect at the time when plaintiff submitted her insurance application. As plaintiff did not present this argument to the trial court, plaintiff's presentation of this argument on appeal is unpreserved for appellate review.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014). "When evaluating a motion for summary disposition under MCR 2.116(C)(10), 'a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion.' " *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 491, 507; 885 NW2d 861 (2016), quoting *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). " 'Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.' " *Innovation*, 499 Mich at 507, quoting *Maiden*, 461 Mich at 120.

"Interpretation of a contract and whether the trial court properly applied equitable principles involve questions of law that we review de novo." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 443; 889 NW2d 759 (2016).

"Unpreserved issues, however, are reviewed for plain error affecting substantial rights." *Nat'l Wildlife Federation*, 306 Mich App at 373. " 'To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e.,

clear or obvious, 3) and the plain error affected substantial rights.' " *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A party's demonstration that their substantial rights have been affected " 'generally requires a showing of prejudice[.]' " *DeCosta v Gossage*, 486 Mich 116, 138; 782 NW2d 734 (2010), quoting *Carines*, 460 Mich at 763. "[A] showing of prejudice means 'that the error affected the outcome of the lower court proceedings.' " *DeCosta*, 486 Mich at 138 n 13, quoting *Carines*, 460 Mich at 763.

## III. ANALYSIS

Plaintiff asserts that the trial court erred when it granted MEEMIC's motion for summary disposition, wherein MEEMIC argued it was entitled to rescind plaintiff's insurance policy due to her innocent misrepresentation of her employer on her insurance application. Plaintiff's assertion lacks merit. " 'An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties.' " *Dancey v Travelers Prop Cas Co of America*, 288 Mich App 1, 8; 792 NW2d 372 (2010), quoting *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). " 'The policy application, declarations page of [the] policy, and the policy itself construed together constitute the contract.' " *Dancey*, 288 Mich App at 8, quoting *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005) (alteration in original).

"Michigan's contract law recognizes several interrelated but distinct common-law doctrines—loosely aggregated under the rubric of 'fraud'—that may entitle a party to a legal or equitable remedy if a contract is obtained as a result of fraud or misrepresentation. These doctrines include actionable fraud, also known as fraudulent misrepresentation; innocent misrepresentation; and silent fraud, also known as fraudulent concealment." *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). "The legal and equitable remedies for fraud are manifold," which include "legal and equitable remedies such as cancellation, rescission, or reformation . . . ." *Id.* at 557-558 (citation omitted).

As explained by this Court:

"To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the *status quo*. [*Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995), quoting *Cunningham v Citizens Ins Co of America*, 133 Mich App 471, 479; 350 NW2d 283 (1984) (emphasis in original).]

"Because a claim to rescind a transaction is equitable in nature, it is not strictly a matter of right but is granted only in the sound discretion of the court." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018) (quotation marks and citations omitted).

Generally, "[i]n order to warrant rescission, there must be a material breach affecting a substantial or essential part of a contract." *Martino v Cottman Transmission Sys, Inc*, 218 Mich App 54, 69-70; 554 NW2d 17 (1996). "Indeed, it is well settled that an insurer is entitled to rescind a policy *ab initio* on the basis of a material misrepresentation made in an application for no-fault insurance." *21st Century*, 315 Mich App at 445-446 (emphasis in original). "[A] fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.' " *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001), quoting *Keys v Pace*, 358 Mich 74, 82; 99 NW2d 547 (1959).

" 'Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage.' " *21st Century*, 315 Mich App at 446, quoting *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998). As explained by the Michigan Supreme Court, "the innocent misrepresentation rule differs [from actionable fraud] in eliminating the *scienter* and proof of the intention that the misrepresentation be acted upon;" however, " 'the innocent misrepresentation rule adds the requirements that the misrepresentation be made in connection with making a contract and the injury suffered by the victim must inure to the benefit of the misrepresenter.' " *Titan*, 491 Mich at 556 n 5, quoting *US Fidelity & Guaranty Co v Black*, 412 Mich 99, 118-119; 313 NW2d 77 (1981).

According to MEEMIC's promotional materials, its insurance is offered to teachers, and staff members of public, charter, private, and parochial schools, colleges, and universities, as well as retired individuals who fall within those categories. MEEMIC's underwriting guidelines provide, in relevant part, that "an applicant is eligible" for a MEEMIC insurance policy if the applicant "is a member of the franchise, or group." Under MEEMIC's underwriting guidelines:

A Franchise Group is a group meeting the following qualifications:

1. a group of individuals who are employees or members of a corporation, partnership, credit union, association or governmental department, unit or agency, or

2. a group of individuals who are employees or members of the organizations provided the organizations have significant characteristics in common or are part of a larger organizational structure, or

3. a group of individuals who are members of one of a group of organizations which have significant characteristics in common or are part of a larger organization structure, or

-4-

4. a group of individuals in any other organization formed in good faith for purposes other than that of obtaining insurance; provided that a Group does not deny admission based on any of the prohibited criteria listed in Section 2027 of the Michigan Insurance code.

Nine "franchise groups" are listed in MEEMIC's underwriting guidelines: (1) "Educational Service Emp.," (2) "Educ. K-12 Professionals," (3) "Educ. Administrators," (4) "Post Secondary Professionals," (5) "Educ. Admin. Assistants," (6) "Teaching Hospital Instructors," (7) "Teaching Hospital Medical," (8) "Teaching Hospital Management," and (9) "Educator Legacy." Additionally, MEEMIC offered its insurance to the employees and members of certain teaching hospitals and credit unions, and it maintained a list of the eligible organizations. MEEMIC's list of eligible teaching hospitals included "St. John Providence Hospital & Medical Center."

According to Sarah Gale-Barbantini, an attorney who was employed by MEEMIC as a "claims technical consultant," MEEMIC's underwriting guidelines do not define the nine franchise groups. Rather, "the four qualifications" listed in the definition for the term "franchise group" "modifies the nine" specific "franchise groups." Thus, Gale-Barbantini explained that MEEMIC's underwriters "read" and "interpret" its underwriting guidelines on a "case-by-case basis" when they determine an applicant's eligibility for MEEMIC insurance.

On April 19, 2011, plaintiff sent a letter of resignation to her manager, Kenneth Coleman, the "director of community health" at St. John Providence, a hospital in Southfield, wherein plaintiff explained that she was resigning from her position at St. John Providence "effective June 1, 2011." On April 28, 2011, the Michigan Primary Care Association, sent plaintiff a letter thanking plaintiff for accepting a position with the Michigan Primary Care Association. According to the letter, plaintiff's new position had a "start date" of May 27, 2011. On May 9, 2011, plaintiff signed enrollment forms for health insurance and dental insurance relating to her employment for the Michigan Primary Care Association.

According to plaintiff, she worked for the Michigan Primary Care Association as a "Regional coach, State monitor," pertaining to a "federal grant" received by the Michigan Department of Education relating to "school culture and climate," and her job duties involved supervising four individuals who "carried out the actual grant stipulations." Plaintiff "had to physically go to [her] schools weekly to meet with" the individuals she supervised in order to "monitor" those individuals. She acknowledged that "[e]verything [she] did entailed supervising," and that "85 to 95 percent" of her duties involved "supervising," and she confirmed that she did not provide "individual services" to "children" even when she met with students to get feedback for "the program."

According to Coleman, plaintiff's last day working for "St. John Providence" was June 13, 2011. At the end of June 2011, plaintiff signed her MEEMIC insurance application. In her application, plaintiff indicated that her employer was "St. John Hospital," her occupation was "OTHER NON EDUCATIONAL EMPLOYER," and her "Franchise GROUP" was "TEACHING HOSPITAL EMPLOYEE." The insurance application required a certification from plaintiff that the information she provided in the application was true, and it contained a statement that "MEEMIC may declare this policy null and void if this application contains any

false or misleading information . . . ." Plaintiff's insurance application was ultimately approved, and under the terms the insurance policy, the policy was "void" if any insured person under the policy "intentionally concealed or misrepresented any material fact or circumstance relating to . . . [t]he Application for it[.]"

On July 5, 2011, Coleman conducted an exit interview with plaintiff, as he was unavailable to do so earlier. Coleman explained that former employees did not receive payment for participating in the exit interview, and that the exit interview process was "very short" and normally only lasted "between 15 [minutes] and a half hour[.]" In an affidavit authored by plaintiff, plaintiff explained that she "considered [herself] an employee of St. John Providence until" she had her exit interview with Coleman.

In January 2015 plaintiff was injured in an automobile accident. In January 2016, plaintiff filed her complaint, in which she alleged that MEEMIC had refused to provide her with payment for her PIP benefits pursuant to her insurance policy. In October 2016, MEEMIC sent plaintiff a "RESCISSION OF POLICY" letter because plaintiff listed her employer as "St. John Hospital" in her insurance application, and stating that MEEMIC's "investigation" revealed that plaintiff was not employed by "St. John Hospital" when she submitted her insurance application. In its letter, MEEMIC explained that plaintiff's "failure to disclose [her] actual place of employment constitute[d] a material misrepresentation" and therefore, MEEMIC was rescinding plaintiff's insurance policy.

Gale-Barbantini explained that "after it was discovered that" plaintiff had misrepresented her employer on her insurance application, MEEMIC's underwriters also determined that plaintiff would not have qualified for her insurance policy based on plaintiff's employment with the Michigan Primary Care Association. According to Gale-Barbantini, MEEMIC determined that plaintiff "did not fall into any of MEEMIC's franchise groups" based on how plaintiff "described her job" with the Michigan Primary Care Association. Specifically, plaintiff was not eligible for MEEMIC insurance based on her employment with the Michigan Primary Care Association because plaintiff "was not employed by a school at the time and [she] was not actively in a school for her work."

In November 2016, MEEMIC moved for summary disposition under MCR 2.116(C)(10) regarding plaintiff's claims for PIP benefits against MEEMIC on the ground it was entitled to rescind plaintiff's insurance policy because plaintiff's misrepresentation of her employer on her insurance application was a material misrepresentation. Ultimately, the trial court granted MEEMIC's motion for summary disposition because it found that plaintiff had made a "material misrepresentation" on her insurance application and it did not find that plaintiff would have qualified for MEEMIC insurance even if plaintiff had disclosed her actual employer on her insurance application.

Plaintiff argues that the trial court erred when it ruled that plaintiff's misrepresentation was a "material misrepresentation" because MEEMIC's underwriting guidelines are ambiguous and provide "complete discretion" to MEEMIC's underwriters to determine the eligibility of an applicant for MEEMIC insurance who does not fall within the nine "franchise groups." Therefore, contends plaintiff, MEEMIC's underwriting guidelines should be "construed against" MEEMIC. Plaintiff's argument seemingly relies on an assumption that MEEMIC's underwriting

guidelines were part of the insurance policy it issued to plaintiff. However, as previously discussed, " '[t]he policy application, declarations page of [the] policy, and the policy itself construed together constitute the contract.' " *Dancey*, 288 Mich App at 8, quoting *Royal Prop Group, LLC*, 267 Mich App at 715 (second alteration in original). Therefore, absent any indication otherwise, there is no reason to conclude that MEEMIC's underwriting guidelines were part of plaintiff's insurance policy.

Further, plaintiff does not provide any legal authority in support of her proposition that MEEMIC's underwriting guidelines, which were not part of plaintiff's insurance policy, may be construed in the same fashion as ambiguous language in a contract. " '[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned.' " *Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 379; 909 NW2d 1 (2017), quoting *Prince v MacDonald,* 237 Mich App 186, 197; 602 NW2d 834 (1999). Therefore, plaintiff has abandoned this argument on appeal.

Relatedly, plaintiff argues that her misrepresentation of her employer on her insurance application was not a material misrepresentation because MEEMIC would have issued her the same insurance policy if she had disclosed her actual employer at the time, the Michigan Primary Care Association, pursuant to the latent ambiguity in MEEMIC's underwriting guidelines. Plaintiff's argument has no merit.

Plaintiff again relies on the "ambiguous" nature of MEEMIC's underwriting guidelines, as she notes that MEEMIC's underwriting guidelines do not provide definitions for the nine franchise groups. Moreover, plaintiff contends that MEEMIC's underwriters are provided with the discretion to determine if an applicant for MEEMIC insurance meets the unwritten "qualifications" for membership within one of the nine franchise groups. However, plaintiff has not identified any evidence that MEEMIC would have issued her the same insurance policy if she had correctly identified her employer on her insurance application. Gale-Barbantini explained that MEEMIC determined that plaintiff would not have been issued the same insurance policy if plaintiff had disclosed her actual employer on her insurance application because plaintiff "did not fall into any of MEEMIC's franchise groups" based on how plaintiff "described her job" with the Michigan Primary Care Association, and also because she "was not employed by a school at the time and [she] was not actively in a school for her work."

Plaintiff's reliance on the "ambiguous" nature of MEEMIC's underwriting guidelines does not demonstrate the existence of a genuine issue of material fact, as plaintiff does not identify how, under the "ambiguous" guidelines she would have otherwise been eligible to receive an insurance policy from MEEMIC if she had disclosed her actual employer. Instead, MEEMIC provided evidence that it relied on plaintiff's misrepresentation when it issued her insurance policy, and that it would not have otherwise done so absent plaintiff's misrepresentation. Plaintiff notes that her employment with the Michigan Primary Care Association rendered her eligible for membership at the Michigan Schools and Government Credit Union, and therefore, she suggests that she would have fallen "within a franchise group." However, plaintiff does not explain why her eligibility for membership in a specific credit union should have any bearing on her eligibility to receive an insurance policy from an entirely distinct entity.

Plaintiff next argues that the trial court's grant of summary disposition in favor of MEEMIC should be reversed because MEEMIC failed to provide a copy of its underwriting guidelines that were in effect at the time plaintiff submitted her insurance application to MEEMIC. " 'A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim.' " *Southfield Ed*, 320 Mich App at 379, quoting *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007). "A party abandons an issue when it fails to include the issue in the statement of questions presented in its appellate brief . . . ." *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013).

MEEMIC provided a copy of its underwriting guidelines to plaintiff during discovery; however, each page of the copy of MEEMIC's underwriting guidelines indicates the effective date of the guidelines provided on that page, and those dates range from January 2009 to July 2016. During Gale-Barbantini's deposition, plaintiff's counsel noted the effective date on the copy of MEEMIC's underwriting guidelines, and he proceeded to ask Gale-Barbantini "where are the underwriting guidelines for July 1st of 2011?" Gale-Barbantini replied that it was her "understanding" that there had been "no major changes and—or any major changes at all" to MEEMIC's underwriting guidelines between July 2011 and March 2014.

Plaintiff cursorily contends that MEEMIC's failure to provide a copy of its underwriting guidelines that were in effect when plaintiff submitted her insurance application should have defeated its defense because without a copy of those underwriting guidelines MEEMIC "did not and could not show" that plaintiff "would not have qualified" for MEEMIC insurance based on plaintiff's employment with the Michigan Primary Care Association. However, plaintiff failed to raise any objection regarding the effective date of the copy of MEEMIC's underwriting guidelines in her response to MEEMIC's motion for summary disposition or during the hearing for that motion, and plaintiff relied on the provided copy of MEEMIC's underwriting guidelines to advance her own arguments regarding their ambiguity. Further, plaintiff does not provide any legal authority or a developed argument in support of her contention that MEEMIC was required to provide a copy of its underwriting guidelines that were in effect when plaintiff submitted her insurance application, and plaintiff does not address the other evidence in the lower court record regarding plaintiff's eligibility for MEEMIC insurance, including the testimony of Gale-Barbantini. Plaintiff also did not include this issue in her statement of questions presented in her brief on appeal. Therefore, plaintiff has abandoned this argument on appeal.

Plaintiff asserts that the trial court erred when it granted MEEMIC's motion for summary disposition because there was a genuine issue of material fact regarding whether plaintiff intentionally misrepresented her employer on her insurance application. Plaintiff's assertion fails. As previously discussed, " '[r]escission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer.' " *21st Century*, 315 Mich App at 446, quoting *Lake States*, 231 Mich App at 331. Therefore, the trial court need not have considered whether plaintiff's misrepresentation was intentional when it granted MEEMIC's motion for summary disposition due to plaintiff's innocent misrepresentation.

Plaintiff contends that MEEMIC was only permitted to seek rescission of plaintiff's insurance policy based on an intentional misrepresentation as the insurance policy provides that the policy "is void" if the insured "intentionally concealed or misrepresented any material fact or

circumstance relating to . . . [t]he Application for it[.]" Essentially, plaintiff's interpretation of the insurance policy is that the word "intentionally" modifies both the word "concealed" and "misrepresented," and therefore, MEEMIC is only permitted to seek rescission in the case of an intentional misrepresentation. However, plaintiff provides no binding legal authority in support of her construction of the insurance policy's language. Instead, plaintiff provides a citation to an unpublished, per curiam opinion issued by this Court[1] that does not pertain to innocent misrepresentation in order to support her assertion that this Court "has routinely ruled under similar policy provisions" that an insurer must demonstrate that there was an "intentional" misrepresentation. Under MCR 7.215(C)(1), unpublished opinions of this Court are not binding on this Court. " 'A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim.' " *Southfield Ed*, 320 Mich App at 379, quoting *Nat'l Waterworks, Inc*, 275 Mich App at 265. Therefore, plaintiff has abandoned this issue on appeal.

Regardless, even if plaintiff had not abandoned this issue, plaintiff's interpretation of the insurance policy has little bearing on whether rescission, an equitable remedy, would generally be available to MEEMIC after it discovered plaintiff's innocent misrepresentation. See *21st Century*, 315 Mich App at 445-446 (explaining that while the terms of the insurance policy permitted the plaintiff to seek rescission of an insurance policy it has been long recognized that an insurer may seek to void an insurance policy on the basis of a material misrepresentation); *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517; 540 NW2d 480 (1995) (observing that insurers may rescind an insurance contract due to a material misrepresentation in an insurance application); *Lash*, 210 Mich App at 103-104 (holding that rescission was appropriate where the plaintiff made an innocent misrepresentation that was a material misrepresentation in his insurance application).

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford

---

[1] *Haley v Farm Bureau Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued August 27, 2013 (Docket No. 302158), slip op p 2.